*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 12, 2021

v

JIMMY FOSTER HALL,

Defendant-Appellant.

No. 352609
Macomb Circuit Court
LC No. 2018-002537-FC

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with person under 13), and one count of accosting a child for immoral purposes, MCL 750.145a.[1]  Defendant was sentenced to concurrent terms of 57 to 180 months' imprisonment for each CSC-II count and 24 to 48 months' imprisonment for accosting a child for immoral purposes.  Finding no error requiring reversal, we affirm.

## I. BACKGROUND

This case arises from allegations that defendant sexually assaulted TS while he was dating TS's grandmother, Janette.  TS testified that she, her mother, and her siblings, moved in with Janette and defendant the summer after sixth grade, at which time she would have been 12 years old.  TS described assaults that included defendant surreptitiously touching her breasts under the guise of giving her a massage, exposing her breast and kissing it, sticking his fingers in her vagina, roughly grabbing her breast on the front porch, and certain inappropriate sexual comments.  TS indicated that the assaults began while she was living with defendant and continued when she would visit Janette after moving out.  She agreed that everything must have happened before she

---

[1] Defendant was found not guilty of one count of first-degree criminal sexual conduct, MCL 750.520b(2)(b) (penetration with person under 13, defendant 17 or older).

-1-

turned 13 years old in December 2014 because Janette and defendant broke up before then. TS did not disclose what happened with defendant until January 2017.

## II. TS'S SEXUAL ASSAULT BY A THIRD PARTY

Defendant first argues on appeal that the trial court erred by excluding evidence that TS alleged she was assaulted by her "uncle," Eric Forton,[2] shortly before she disclosed defendant's assaults. We disagree.

We review a trial court's evidentiary rulings for an abuse of discretion. *People v Caddell*, 332 Mich App 27, 64; 955 NW2d 488 (2020). An abuse of discretion "occurs when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted). Questions of constitutional law underlying evidentiary rulings are reviewed de novo. *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012).

Although defendant questioned the applicability of the rape-shield statute, MCL 750.520j, below, he does not pursue that issue on appeal.[3] Instead, he challenges the trial court's exclusion of this evidence on the grounds that it interfered with his constitutional rights to confront TS and present a defense. Evidence inadmissible under the rape-shield statute may be admitted at trial in limited circumstances implicating the defendant's constitutional rights, such as the right of confrontation. See *People v Benton*, 294 Mich App 191, 197; 817 NW2d 599 (2011). Such circumstances may exist when the evidence would establish the complainant's bias, ulterior motive for making a false charge, or that the complainant has made false accusations of rape in the past. *Id*., citing *People v Hackett*, 421 Mich 338, 344, 348; 365 NW2d 120 (1984). This Court has also opined that evidence of a young complainant's prior exposure to sexual abuse may be admissible to establish age-inappropriate sexual knowledge. *People v Morse*, 231 Mich App 424, 436; 586 NW2d 555 (1998). When assessing the admissibility of the evidence, the trial court must remain mindful "of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Benton*, 294 Mich App at 197-198, quoting *Hackett*, 421 Mich at 349 (quotation marks omitted).

Here, the trial court concluded that although TS described digital penetration by both men, the sexual abuse by Eric was not significantly similar to the sexual abuse perpetrated by defendant. TS explained that she was sleeping in Eric's bed on New Year's Eve when he began rubbing her thigh and then put his fingers inside her vagina. She also noted at her Care House interview that Eric asked if she "wanted to play some more." She said no and began to cry. She was 15 years old at the time. When the digital penetration occurred with defendant, she was between the ages of 11 and 13 years old, and they were on the couch in the basement playing the dice game. TS

---

[2] TS testified that Eric is not a blood relative—he is the son of Janette's estranged husband.

[3] MCL 750.520j(1) provides that "[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct" is generally inadmissible at trial.

explained that defendant moved her shorts over, put his fingers in her vagina once, lifted his fingers to his mouth, and said that she tasted good. According to her statements at Care House, TS cried and retreated upstairs afterwards. TS recalled that it felt like she had been scratched both times, but she only bled after Eric's assault, which involved moving his fingers in and out repeatedly rather than the single insertion that occurred with defendant. She agreed that Eric was impaired by drugs and defendant was impaired by alcohol at the time of their respective the assaults.

Despite the commonality in terms of digital penetration and TS physical and emotional feelings in the aftermath, we agree with the trial court's conclusion that the specific details of each allegation vary in several significant ways. The locations and circumstances of the assaults—that is, at Eric's house in bed compared to defendant's basement in the midst of a game—clearly have no similarity. TS also described the specific penetrations differently, with defendant engaging in a single insertion while Eric moved his fingers in and out multiple times. TS alleged that Eric had never sexually assaulted her before, while defendant's penetration was part of a series of assaults that occurred during and after the period she lived with him. We find no error in the trial court's assessment of the dissimilarity of the allegations and its corresponding conclusion that the evidence was inadmissible under the rape-shield statute.

Moreover, even if we disagreed with the trial court's analysis on this point, exclusion of the evidence did not violate defendant's constitutional rights in any event. Defendant maintains that the evidence of TS's allegations against Eric was necessary to establish bias against defendant, a recognized circumstance in which evidence of sexual conduct should be admitted. See *Benton*, 294 Mich App at 197. But the trial court correctly determined that the evidence was not particularly probative of this issue. Defendant fails to recognize that TS's reluctance to accuse Eric, a person with whom she had a valued relationship, has little relevance in determining whether she was biased against defendant, even if she did not show the same reluctance to accuse defendant. Importantly, TS readily acknowledged at the evidentiary hearing that defendant was not a "favored person amongst the family," and that she had heard family members talk about his excessive drinking and poor treatment of Janette. That TS and her family did not harbor the same ill feelings toward Eric does not tend to make TS's bias against defendant more or less probable. More importantly, defendant was able to and did question TS about her family's view of him at trial, thereby placing the issue of her bias before the jury without undermining the legislative policy determination that evidence of a complainant's sexual history is not legally relevant. See *People v Sharpe*, 502 Mich 313, 326; 918 NW2d 504 (2018) (discussing policy considerations underlying rape-shield statute); *Benton*, 294 Mich App at 197-198 (noting that courts considering constitutional admissibility of rape-shield barred evidence must remain mindful of policy considerations and favor exclusion of such evidence).

Defendant also argues that the evidence was necessary and admissible to establish TS's age-inappropriate sexual knowledge. Defendant's reliance on *Morse*, 231 Mich App at 436, for this proposition is unpersuasive because *Morse* is quite clearly factually distinguishable. In *Morse*, an eight-year-old complainant indicated that the defendant put his finger in her vagina and his penis in her anus, while a 10-year-old complainant said defendant touched her vagina and stuck his "thing-a-ma-jig in [her] butt." *Id*. at 427-428 (quotation marks omitted). This Court reasoned that in the absence of evidence that both complainants had been previously assaulted by another adult, the jury would be left to infer that the young complainants' knowledge of such acts demonstrated that the defendant had, in fact, abused them. *Id*. at 433-434. Here, TS was 15 years

old when she first disclosed defendant's abuse, 17 years old when she testified at the evidentiary hearing, and 18 years old by the time she testified at trial. Unlike the 8 to 10-year-old complainants in *Morse*, TS's knowledge about digital penetration and the other sexual contact she described at trial can hardly be characterized as unique or remarkable for her age. See *People v Duenaz*, 306 Mich App 85, 93; 854 NW2d 531 (2014) (reasoning that it would be speculative to assume 12-year-old witness's knowledge of vaginal and anal penetration was inappropriate). The rationale of *Morse* as it relates to age-inappropriate knowledge simply does not apply to the facts of this case.

Lastly, defendant maintains that the evidence concerning TS's allegations against Eric was necessary to allow his expert, Dr. Katherine Jacobs, to fully address the propriety and reliability of TS's disclosure. According to defendant, this is the very type of expert evidence that our Supreme Court considered necessary in *People v Trakhtenberg*, 493 Mich 38; 826 NW2d 136 (2012). Defendant's reliance on *Trakhtenberg* is misplaced because that case did not address the admissibility of particular evidence, but rather the question of whether the defense counsel's limited investigation amounted to ineffective assistance of counsel. *Id*. at 52-58. Defendant does not suggest that his defense counsel was ineffective, nor could he on this basis when defense counsel clearly investigated the reliability of TS's disclosure and presented expert testimony on that issue. At any rate, while *Trakhtenberg* did discuss the need for an attorney to consult an expert regarding the propriety of a complainant's disclosure, the improprieties at issue did not involve the complainant's history of having been sexually assaulted or other rape-shield barred topics. See *id*. at 45-47, 53-55.

Defendant's suggestion that evidence must be admitted when it is necessary to an expert's opinion is at odds with MRE 703, which requires that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference . . . be in evidence." *People v Bynum*, 496 Mich 610, 624 n 22; 852 NW2d 570 (2014), quoting MRE 703 (quotation marks omitted, alteration in original). In other words, the expert must rely on admissible facts—an expert's reliance on an inadmissible fact does not render it admissible. See *Doan v Highland Beach Inn*, 158 Mich App 144, 147; 404 NW2d 640 (1986) ("The trial court did not abuse its discretion when it refused to allow plaintiff's expert to testify that defendant was drunk, based on his review of the blood test, since the blood test itself was inadmissible.").

Moreover, the essence of defendant's constitutional argument is that the evidence was necessary to Dr. Jacobs's opinion and, therefore, necessary to his defense. Although criminal defendants have a constitutionally protected right to present a defense, that right "is not unlimited and is subject to reasonable restrictions." *People v Parrot*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350380); slip op at 4, lv pending (quotation marks and citation omitted). The Legislature has broad latitude to create rules excluding evidence from trials. *Id*. "Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (quotation marks and citation omitted). The rape-shield statute represents a legislative policy determination that a complainant's sexual conduct is not legally relevant, carries a danger of unfairly prejudicing or misleading the jury, and that protecting a complainant's privacy removes a historical impediment to seeking prosecution. *Sharpe*, 502 Mich at 326. The statute and Michigan caselaw strike a balance that allows the evidence of a complainant's sexual conduct only for limited, specified purposes or when absolutely necessary to protect an important constitutional right. The limitations placed on rape-

shield barred evidence are neither arbitrary nor disproportionate to furthering these goals, especially under the circumstances at hand. Importantly, even without the evidence regarding the allegations against Eric, defendant was still able to present testimony from his expert regarding the potential unreliability of TS's allegations and the sources of suggestibility she was exposed to, including repeated questioning from untrained, potentially biased family members, stereo-typing or tone of incrimination, adolescent development, social dynamics, and counseling. Defendant was not denied his constitutional rights by the exclusion of this evidence, and the trial court did not abuse its discretion by excluding it.

### III. COUNSELING RECORDS

Defendant next argues that the trial court erred by denying his motion for discovery of TS's counseling records. We disagree.

We review discovery rulings for an abuse of discretion, which occurs when the trial court's decision "falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Jack*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354524); slip op at 3 (quotation marks and citation omitted).

When a defendant seeks privileged records, the defendant must establish a "good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *People v Stanaway*, 446 Mich 643, 677; 521 NW2d 557 (1994). Upon making the requisite showing, the trial court should conduct an *in camera* inspection of the records. *Id*. at 678-679. If the records contain evidence that is reasonably necessary to the defense, it must be supplied to the defendant. *Id*. at 649-650. Conversely, "disclosure should not occur when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *Id*. at 680 (quotation marks and citation omitted).

*Stanaway* applied these standards to respective discovery requests in two companion cases. The first defendant, Brian Stanaway, sought the complainant's counseling records on the basis that the records might contain inconsistent statements or lead to exculpatory evidence, but acknowledged that he had no reason to believe such evidence would be found. *Id*. at 651. Our Supreme Court determined that defendant Stanaway's discovery motion was properly denied because he relied only on generalized assertions that could apply to every case involving criminal sexual conduct. *Id*. at 681. On the other hand, the Court opined that the second defendant, Stanley Caruso, "may have demonstrated a realistic and substantial possibility that the material he requested might contain information necessary to his defense." *Id*. at 682. In particular, the defense theorized that the complainant was "a troubled, maladjusted child" who was prompted to falsely accuse defendant Caruso because of past sexual abuse by her father. *Id*. at 682. Defendant Caruso cited evidence that the eight-year-old complainant engaged in sexually aggressive behavior, including writing a note to her mother's boyfriend suggesting that the complainant wanted to have sex with him. *Id*. at 654, 682. Given the particularized basis for defendant Caruso's request, the Court remanded to the trial court for further proceedings. *Id*. at 683.

Defendant contends that his request is comparable to defendant Caruso's request because he established that the counseling records *would*, not merely could, contain inconsistent statements

from TS and that TS was similarly maladjusted because she was depressed, suicidal, and self-harming. The trial court rejected both theories. With respect to inconsistencies in TS's various statements, most of the inconsistencies concerned when things happened with defendant or the timeline of her disclosures, and the trial court observed that TS openly admitted she had difficulty remembering when certain events occurred. The trial court reasoned that the inconsistencies were not of a nature that would be necessary to the defense. They did not, for instance, suggest that TS was confused about who abused her or the substance of her allegations. The trial court's conclusion was not outside the range of principled outcomes. Indeed, it seems that defendant's argument is somewhat self-defeating in that he argues that any statements TS made during counseling would necessarily be inconsistent with one of her earlier statements, which already varied among themselves. But defendant's reasoning rests on the fact that he is already in possession of the inconsistent statements through Sykes's Care House interview, journal, and earlier testimony. Without speculating that TS described yet another version of events during counseling, there is no reason to believe that the counseling records would contain information not already available to defendant. See *People v Davis-Christian*, 316 Mich App 204, 213; 891 NW2d 250 (2016) ("As long as defendant is able to make a sound argument in his defense without having access to complainant's privileged counseling records, any information in those records would not be material to his defense.").

Concerning the implications of TS's mental health, merely characterizing a complainant as "maladjusted" does not automatically satisfy the defendant's duty to make an adequate showing that the records are likely to contain material information necessary to the defense. As noted earlier, despite the *Caruso* complainant's young age, there was evidence that she had a history of making sexually suggestive comments and that earlier sexual abuse inflicted by her father had never been resolved. *Stanaway*, 446 Mich at 682. It was defendant Caruso's position that this past trauma caused the complainant to falsely accuse him. *Id*. at 682. These allegations created an articulable basis to believe that the complainant's counseling records might shed further light on the issue. That TS experienced depression, had suicidal thoughts, and engaged in self-harm does not raise the same implications. In other words, we do not read *Stanaway* as creating an entitlement to an *in camera* review of the confidential records of a complainant who displays mental-health issues. Thus, the trial court did not abuse its discretion by denying defendant's motion to review TS's counseling records because he failed to establish a reasonable probability that the records were likely to contain material information necessary to his defense.

## IV. MCL 768.27a EVIDENCE

Defendant next argues that the trial court erred by granting the prosecution's motion to admit evidence of other allegations that defendant committed sexual assault against his former step-daughter, MA. We disagree.

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *Caddell*, 332 Mich App at 64. An abuse of discretion "occurs when the court chooses an outcome that falls outside the range of principled outcomes." *Douglas*, 496 Mich at 565 (quotation marks and citation omitted).

In a prosecution charging a "listed offense" against a minor, MCL 768.27a governs the admissibility of evidence that the defendant committed other listed offenses against a minor.

*People v Watkins*, 491 Mich 450, 455; 818 NW2d 296 (2012).  A listed offense is a Tier I, Tier II, or Tier III offense under the Sex Offenders Registration Act, MCL 28.721 *et seq*.  MCL 768.27a(2)(a); MCL 28.722(j), as amended by 2014 PA 328.  MCL 768.27a applies to the evidence of MA's allegations because the charged offenses and the acts she described involve first or second-degree criminal sexual conduct, which are both Tier III offenses.  MCL 28.722(w)(*iv*) and (*v*), as amended by 2014 PA 328.  MCL 768.27a permits the admission of evidence of other listed offenses, which may be "considered for its bearing on any matter to which it is relevant," MCL 768.27a(1), including the defendant's propensity to commit the acts at issue, *Watkins*, 491 Mich at 470-471.

Notwithstanding the general admissibility of evidence under MCL 768.27a(1), it may still be subject to exclusion under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Watkins*, 491 Mich at 481, quoting MRE 403 (quotation marks omitted).  Although propensity evidence is recognized as prejudicial by nature, to give effect to the Legislature's intent in enacting MCL 768.27a, the propensity inference must be weighed in favor of the probative value of the evidence.  *Watkins*, 491 Mich at 486-487.  In applying MRE 403, courts should consider the following nonexhaustive list of factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.  [*Id*. at 487-488.]

In its opinion and order granting the prosecution's motion, the trial court summarized the allegations made by MA and TS:

> In the case at bar, the prosecution asserts that [MA] will testify that [defendant] was married to her mother from 1981 to 1991, and he began sexually assaulting her at the beginning of the marriage when she was 4 years old, with the last assault occurring when she was 12 years old.  [MA] has described several instances of abuse over the period of 8 years while she lived in the same home as [defendant].  [MA] did not disclose the assaults until she was 26 years old, when she told her mother that she had been assaulted by [defendant] since the age of 4.  [MA] did not make any police report at the time because she believed she would be unable to prosecute due to the statute of limitations.  [MA] is also uncertain whether her mother believed her allegations at that time.
>
> The allegations include that [defendant] would remove [MA's] clothes, undress himself and lay in bed with her; [defendant] told [MA] to rub his penis and he would touch her vagina and he would force his penis into her mouth.  [MA] alleges that the first time she remembers [defendant] sexually assaulting her, when she was 4 years old, he forced his penis into her mouth.  At times while living with [defendant], [MA] would wake up on the couch and [defendant] would be touching her vagina, and in one instance she woke up on the couch and [defendant] had his

finger in her rectum. She also described multiple occasions where she woke up to find [defendant] laying with her, and her body felt like she had been sexually assaulted but she could not remember the details of what occurred. [MA] also alleges that as she got older, [defendant] would follow her into the bathroom and comment on her development. As she began to develop as an adolescent, [MA] alleges that [defendant] would scratch her back and then move around to touch her breasts. And when she was 12, [MA] alleges that the final sexual assault occurred while [defendant's] sons were visiting and wrestling around the house; [defendant] wanted to wrestle with [MA], chased her into her bedroom, pinned her to the floor, and pulled out his privates, placing them on her back. [MA] alleges that she screamed and kicked until [defendant] let her go and left the room.

\* \* \*

The complaining witness in this case[, TS,] alleges that [defendant] began sexually assaulting her in 2012, approximately 23 years after [MA's] abuse ended. Her allegations include several sexual assaults that occurred while they were playing a dice game or watching television in the basement of the home they lived in together. The complaining witness described an instance of digital-vaginal penetration wherein she and [defendant] were sitting on the couch next to each other when he inserted his fingers inside and out of her vagina once, and he then put his fingers to his mouth and commented that she tasted good. She alleges that [defendant] would massage her back and then reach around to touch her breasts, and that [defendant] would come into the bathroom when she was bathing and would make comments on her physical development.

Although defendant disagrees with the trial court's legal analysis, he does not challenge the trial court's recitation of the allegations before the court at the time of its ruling.[4] Instead, he maintains that the trial court should have excluded the evidence of MA's allegations under MRE 403 and a proper application of the *Watkins* factors.

We acknowledge that the acts alleged by MA were dissimilar to the charged offenses in some respects, including the duration of the sexual abuse, the girls' ages at the time the abuse began, defendant's penetration of MA's rectum as compared to TS's vagina, and the fact that defendant's abuse of MA frequently involved his penis, while his acts with TS involved his hands or mouth. Even so, as the trial court observed, the similarities between the acts were directly relevant to defendant's propensity to prey on young females in his household and to engage the girls in seemingly benign activities like games, wrestling, or back rubs, then escalate the activity into sexual abuse. The dissimilarities between the allegations were not so extreme that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Neither the frequency of the acts nor intervening acts weigh in favor of excluding the evidence under MRE 403. That both MA and TS claim defendant repeatedly molested them

---

[4] We further note that the trial court's summary is generally consistent with MA's and TS's later trial testimony.

suggests that the acts occurred with sufficient frequency that inclusion of the evidence would not be unfairly prejudicial. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). Defendant suggests that the absence of intervening acts that would disrupt the "continuity of sexual contact" is important, but this Court has previously found that absence of intervening acts does not weigh against admissibility. *Id*.

Defendant further argues that MA's allegations are unreliable because she did not disclose them for several years, never reported them to law enforcement, and did not pursue formal criminal charges. This position is unpersuasive because MCL 768.27a permits the admission of evidence regarding uncharged acts. *Watkins*, 491 Mich at 472. More importantly, delayed reporting is not uncommon in sexual assault cases involving young victims. See, e.g., *Kowalski*, 492 Mich at 123 (referring to delayed reporting as common characteristic of child sexual abuse victims); *People v James*, 326 Mich App 98, 101; 931 NW2d 50 (2018) (involving sexual assault that was not reported for approximately 20 years).

Defendant does not address the sixth *Watkins* factor, i.e., whether evidence beyond the complainant's and the defendant's testimony is necessary. There was clearly a need for additional evidence in this case considering TS's delayed disclosure, the potentially unreliable conditions of her disclosure, and the absence of physical corroborating evidence. *Duenaz*, 306 Mich App at 100.

The temporal proximity of the other acts and the charged offenses is perhaps the most favorable *Watkins* factor for defendant. Defendant's sexual abuse of MA purportedly began around 1981 when she was 4 years old and continued through approximately 1989 when she was 12 years old. TS asserted that defendant first sexually abused her when she was approximately 11 or 12 years old, which would have been in 2012 or 2013—over two decades later. This Court has previously opined that a 12-year gap was not unreasonable when the acts were substantially similar. *Solloway*, 316 Mich App at 195. However, the temporal gap in this case is substantially longer and the circumstances at issue lack the same degree of similarity present in *Solloway*.

Nonetheless, we must recognize that the *Watkins* factors are but "a tool to facilitate, not a standard to supplant, [the] proper MRE 403 analysis, and it remains the court's 'responsibility' to carry out such an analysis in determining whether to exclude MCL 768.27a evidence under that rule." *People v Uribe*, 499 Mich 921, 922 (2016). Here, the trial court weighed the appropriate considerations and ultimately determined that the other-acts evidence was strongly probative of whether TS's allegations were truthful and that the probative value was not substantially outweighed by the risk of unfair prejudice. We will not conclude that the trial court's resolution of this evidentiary question, even if characterized as close, was outside the range of principled outcomes. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019) ("A decision on a close evidentiary question ordinarily cannot be an abuse of discretion.").

## V. JUDICIAL BIAS

Lastly, defendant argues in a pro se Standard 4 brief that he was denied a fair trial by judicial bias. Again, we disagree.

Defendant failed to preserve this issue for review by raising it below. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Unpreserved claims of error are reviewed for

plain error affecting the defendant's substantial rights. *Id*. "Under the plain error rule, a defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Wiley*, 324 Mich App 130, 150-151; 919 NW2d 802 (2018) (quotation marks and citation omitted). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id*. at 151 (quotation marks and citation omitted). Reversal is warranted "only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thorpe*, 504 Mich at 252-253.

Criminal defendants are entitled to an unbiased decision maker, but "[a] defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 597-598 (quotation marks and citation omitted). Defendant argues that the trial court was biased against him, as evidenced by its adverse pretrial rulings and refusal to allow Dr. Jacobs to sit with defense counsel during the testimony of the prosecution's rebuttal witness. Defendant's argument is without merit because "[j]udicial rulings . . . are not themselves grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id*. at 598 (quotation marks and citation omitted). The trial court gave defendant's evidentiary arguments fair consideration and provided detailed explanations of its reasonings on each issue. No favoritism can be discerned from the trial court's thoughtful rulings. Nor can the trial court's refusal to allow Dr. Jacobs to sit at counsel table establish a persuasive ground for judicial bias, even if the prosecution's expert was allowed to sit at counsel table during Dr. Jacobs testimony. Importantly, defendant did not object to the prosecution expert's presence, while the prosecution did oppose Dr. Jacobs's presence. The trial court sustained the prosecution's objection after defense counsel was unable to support his request for Dr. Jacobs's presence with legal authority, but allowed her to sit directly behind counsel table. This was a reasonable exercise of the trial court's discretion. Defendant cannot establish plain error affecting his substantial rights. Simply put, this case bears none of the hallmarks of a case involving judicial bias. See *People v Stevens*, 498 Mich 162, 172-173; 869 NW2d 233 (2015) ("Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, [or] biased commentary in front of the jury . . . .").

## VI. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Brock A. Swartzle

-10-