# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

JOEL HOWARD JAMES,

       Defendant-Appellee.

FOR PUBLICATION
October 11, 2018
9:00 a.m.

No. 342504
Alpena Circuit Court
LC No. 15-006730-FH

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

SWARTZLE, J.

If a crime occurs, but no one reports it, is it still a crime? To ask the question is to answer it. The state of Michigan has an interest in discovering previously unreported crimes, and this interest serves as a rational basis for the Legislature's tolling of the statute of limitations with respect to nonresidents charged with a crime that remained unreported until after the untolled limitations period had lapsed.

Defendant, a resident of Alaska, allegedly sexually assaulted a female minor while visiting Michigan in the 1990s. The statute of limitations periods expired in 2006 and 2007 absent any tolling, but the purported victim did not report the crime until 2012. The prosecutor charged defendant with criminal sexual conduct (CSC) III, a crime for which the statute of limitations is tolled while the person charged resides outside of Michigan. The charges were subsequently dismissed by the trial court on equal-protection grounds because, had defendant been a resident, the limitations period would have expired before the crime was reported. Finding this to be a distinction without a difference, we reverse.

## I. BACKGROUND

Born in Michigan in 1955, defendant served in the military and eventually moved to Alaska. From the early 1990s until 2013, defendant worked primarily for construction companies in Alaska, although he periodically returned to Alpena County, where he still owned property. Beginning in 1992, during these trips to Michigan, defendant sexually assaulted his then-11-year-old niece, and later, beginning in the early 2000s, defendant allegedly sexually assaulted his niece's minor daughter. Neither the niece nor her daughter reported the matter to authorities until 2012, and during the ensuing investigation, a third person disclosed to police

-1-

that defendant sexually assaulted her multiple times in 1996 and 1997 when she was 13-14 years old.

Defendant was extradited to Michigan in 2013 to face CSC charges involving the niece and her daughter, and in 2015, the prosecutor filed similar charges against defendant involving the third person. Defendant was bound over on the various charges. A jury subsequently found defendant not guilty on charges related to the niece's daughter, but a second jury found defendant guilty of CSC-I with regard to the niece. The jury deadlocked on the charges involving the third person, and the prosecutor subsequently refiled a new information charging defendant with two counts of CSC-III involving this third person. The current appeal solely involves these refiled CSC-III charges.

Defendant moved to dismiss the refiled charges based on the statute of limitations. The statute of limitations for CSC-III in effect at the time stated that a charge had to be filed within 10 years after the offense occurred or before the alleged victim's twenty-first birthday, whichever is later. MCL 767.24(3)(a).[1] Given the person's age at the time of the alleged assaults, the latest periods would have expired in 2006 and 2007, well before defendant was extradited and charged with CSC-III in 2015. Yet, the Legislature also included a tolling provision applicable to any limitations period that had not yet expired: "Any period during which the party charged did not usually and publicly reside within this state is not part of the time within which the respective indictments may be found and filed." MCL 767.24(8).[2] In other words, the statute of limitations period is effectively "paused" during the time the party resides outside of Michigan or is otherwise "not usually and publicly" residing in this state. There is no question that defendant "did not usually and publicly reside" in Michigan from at least the 1990s until 2013, so if the tolling provision applies, the 10-year limitations periods on the CSC-III charges would not have lapsed by the time defendant was charged.

In his motion, defendant argued that the tolling provision was unconstitutional as-applied to him, both under the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment. The trial court agreed with defendant, reasoning that "the tolling provision seems to have only been applied in limited situations where a *suspect* was a nonresident during the limitations period." The trial court could find "no rational basis for the tolling provision" to apply when no crime was reported and the party charged was not a suspect

---

[1] MCL 767.24 has been amended several times since the charges in this case were filed. Most recently, MCL 767.24 was amended to provide that a charge involving a minor victim of third-degree sexual assault has to be filed "within 15 years after the offense is committed or by the alleged victim's twenty-eighth birthday, whichever is later." MCL 767.24(4)(a) as amended by 2018 PA 182. Because defendant was charged in 2015 with committing the instant offenses, however, the 2018 amendment is inapplicable to this case.

[2] "An out-of-state tolling provision has been part of MCL 767.24 for the entire timeframe captured by this case." *People v Kasben*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337082); slip op at 2 n 2. The out-of-state tolling provision codified in MCL 767.24(8) at the time the charges were filed in this case is now codified at MCL 767.24(11).

before the untolled limitations period had expired. Concluding that the tolling provision violated defendant's right to equal protection, the trial court dismissed the CSC-III charges.

This appeal followed.

## II. ANALYSIS

There are two issues on appeal—does the tolling provision in MCL 767.24 violate defendant's constitutional right to interstate travel or his right to equal protection under the law? While defendant argues that these are fact-based inquiries, the pertinent facts are not in doubt. Accordingly, with respect to the constitutional and statutory issues applicable here, we review them de novo. *People v Harris*, 499 Mich 332, 342; 885 NW2d 832 (2016).

### A. TOLLING A LIMITATIONS PERIOD DOES NOT VIOLATE THE RIGHT TO TRAVEL

We begin with defendant's argument that the tolling provision violates his constitutional right to travel. Under the federal Fourteenth Amendment's Privileges and Immunities Clause, a person has the fundamental right to travel across the United States. US Const, Am XIV, § 1; *Jones v Helms*, 452 US 412, 418; 101 S Ct 2434; 69 L Ed 2d 118 (1980). This fundamental right is not without qualification, and, in the criminal context, the right is subject to the legitimate interests of states. See *Jones*, 452 US at 419.

We find little merit in defendant's argument. The tolling provision here only applies when a party is not usually and publicly residing in Michigan and, therefore, it does not restrict in any way a person's right to travel within, across, or outside of Michigan's borders. Although the provision does create a negative *consequence* for someone who resides outside of Michigan and becomes a suspect in a crime that occurred within the state, this Court has already held that "the tolling provision advances a compelling state interest in permitting later prosecutions in cases where a defendant no longer resides in the jurisdiction." *People v Crear*, 242 Mich App 158, 165-166; 618 NW2d 91 (2000), overruled in part on other grounds by *People v Miller*, 482 Mich 540; 759 NW2d 850 (2008); cf *Commonwealth v Lightman*, 339 Pa Super 359, 372; 489 A2d 200 (Pa, 1985) (Spaeth, PJ, concurring and writing for the majority) (holding that "appellant's right to travel was qualified, if at all, not by an arbitrary distinction drawn by the government, but by his own criminal conduct"). Although *Crear* was subsequently overruled on other grounds and therefore the decision is not binding, *Dunn v Detroit Auto Inter-Ins Exch*, 254 Mich App 256, 262; 657 NW2d 153 (2002); MCR 7.215(J)(1), we agree with its analysis and come to the same conclusion—the tolling provision of MCL 767.24 does not violate the right to travel found in the Privileges and Immunities Clause of the Fourteenth Amendment.

### B. THE TOLLING PROVISION DOES NOT VIOLATE EQUAL PROTECTION

This leaves us to consider defendant's primary claim before the trial court and now on appeal—whether defendant's "rights as a 'class of one' under the equal protection clause of both the Michigan and United States Constitutions are violated through the application of the nonresident tolling provision." The scope of Michigan's Equal Protection Clause is coextensive with that of its federal counterpart, so the provisions will be considered together in analyzing defendant's claim. Const 1963, art 1, § 2; US Const, Am XIV, § 1; see *Crego v Coleman*, 463

Mich 248, 258; 615 NW2d 218 (2000). In essence, equal protection requires that persons be treated alike with respect to "certain, largely innate, characteristics that do not justify disparate treatment." *Crego*, 463 Mich at 258.

Defendant concedes that the tolling provision is constitutional on its face, but he argues that the provision is unconstitutional as-applied to him because he was never a suspect in a crime reported before the statute of limitations period would have run absent any tolling. Only after the untolled limitations periods would have lapsed did the women come forward and report that they had been sexually assaulted by defendant years before. If he had been a resident[3] throughout this period, then the limitations periods would have expired in 2006 and 2007 before any sexual assault was reported or he had become a suspect, and, as a result, he would now be beyond prosecution. To apply the tolling provision in this case would be to treat him unequally to those residents who are similarly situated, according to defendant.

Defendant presents his claim as an as-applied, "class of one" equal-protection challenge.[4] To prevail on the claim, defendant must show both that (1) he "has been intentionally treated differently from others similarly situated," and (2) "there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000). To be similarly situated to an identified group, defendant must show that he is comparable in all material respects to the members of that group. If he cannot establish that he was treated unequally in some material way, then there is no violation of equal protection. *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013).

As for the rational-basis inquiry, it is a highly deferential one. Defendant must negate "every conceivable reason for the government's actions" or show "that the actions were motivated by animus or ill-will." *Loesel v City of Frankenmuth*, 692 F3d 452, 465 (CA 6, 2012) (cleaned up). With respect to a claim based on legislation, the Legislature need not have actually articulated a particular rationale, and it is sufficient if the Court can identify an interest that may have reasonably been the rationale. *TIG Ins Co, Inc v Dep't of Treasury*, 464 Mich 548, 561-562; 629 NW2d 402 (2001). "Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with mathematical nicety,

---

[3] As noted, the tolling provision applies to those who did "not usually and publicly reside" in Michigan, MCL 767.24(8), and this encompasses more than just those who did not physically reside in the state. For our purposes, we will refer to the distinction between "residents" and "nonresidents," but the latter term should be understood to include those who physically lived in Michigan, though not "customarily and openly." *Kasben*, ___ Mich App at ___; slip op at 5 (cleaned up).

[4] A "facial" challenge and an "as-applied" challenge can share some overlapping features. As the Sixth Circuit observed in *Green Party of Tennessee v Hargett*, 791 F3d 684, 692 (CA 6, 2015), an as-applied claim "can challenge more than just the plaintiff's particular case without seeking to strike the law in all of its applications." If successful, then defendant's legal position would presumably apply to all nonresidents who were charged under similar factual circumstances.

or even whether it results in some inequity when put into practice." *Crego*, 463 Mich at 260 (cleaned up). Given this, there is a strong presumption that the statute is constitutional. *People v Conat*, 238 Mich App 134, 154; 605 NW2d 49 (1999).

*Nonresidents Are Not Similarly Situated to Residents.* As explained, defendant argues that he should be compared to Michigan residents who were not identified as a suspect for a reported crime within the untolled limitations periods. Had defendant been a resident, the limitations periods would not have been tolled, the periods would have expired in 2006 and 2007, and he would have been immune from prosecution. But because he was a nonresident, he was extradited and charged with CSC-III. Defendant contrasts this purportedly similarly situated group with those persons (resident or not) who were identified as a suspect in a reported crime prior to the expiration of the untolled limitations periods.

There is, however, a flaw in defendant's argument. The set of similarly situated persons must be comparable to defendant in all material aspects. On its face, the tolling provision applies to all persons who commit a crime in Michigan and then no longer reside usually and publicly in the state. MCL 767.24(8). Following this, the most natural comparison set for defendant's claim would be those persons who do not usually and publicly reside here. See, e.g., *State v March*, 395 SW3d 738, 788 (Tenn App, 2011) ("The tolling statute on its face applies equally to all persons who commit a crime in this State and then depart.").

Defendant disagrees and instead compares himself to residents. Yet, with respect to a state's police power, there is a material distinction between someone who resides within the state and someone who does not. A state's power to investigate and prosecute a person is severely diminished when that person does not reside within its borders. State and local law enforcement resources are not infinite, and such resources will often be insufficient to investigate, question, or prosecute someone who resides in a different state. See *Burns v Lafler*, 328 F Supp 2d 711, 721 (ED Mich, 2004). Choices need to be made about how best to allocate finite law enforcement resources, and rarely will those resources best be used pursuing out-of-state persons. Moreover, as laboratories for public policy, other states may not share Michigan's priorities with respect to criminal law, and a case that is important in this state may receive less attention from authorities in another state. See *State v Sher*, 149 Wis 2d 1, 14; 437 NW2d 883 (Wis, 1989). For these and other reasons, courts have held that residents and nonresidents are not similarly situated for equal-protection purposes. See, e.g., *Burns*, 328 F Supp 2d at 721 (collecting cases).

*The State Has an Interest in Discovering Previously Unreported Crimes.* Defendant rejoins that his situation is factually distinguishable from *Burns* and similar cases, because in each of those cases there was at least a crime reported, if not a suspect identified, within the untolled limitations period. According to defendant, the state has no legitimate interest in tolling a limitations period for which there has not been a crime reported or suspect identified. As he sums up in his brief, "there was no 'victim' to protect or for whom to seek justice because none had come forward" and "the State has absolutely no interest in distinguishing between residents and nonresidents for purposes of a purely hypothetical future claim."

Defendant's position is without support in law or reason. With respect to law, nowhere in the statute is there a requirement that "the party charged" has to have been an actual suspect in an identified crime prior to the expiration of the untolled limitations period. The term "party

charged" simply refers to the party, here defendant, who was charged with a crime to which the limitations and tolling provisions of MCL 767.24 apply. There is no qualification placed on the "party charged" for the tolling provision to apply other than that the party must not have "usually and publicly reside[d] within this state." We will not read into the statute a term that the Legislature did not put there. *D'Agostini Land Company LLC v Dep't of Treasury*, 322 Mich App 545, 557; 912 NW2d 593 (2018).

Similarly, the authority that the trial court relied upon for the proposition that, for the tolling provision to apply, defendant must have been a "suspect" or an "accused" prior to the expiration of the untolled limitations period, is inapposite. See *Crear*, 242 Mich App 158; *People v McIntre*, 232 Mich App 71; 591 NW2d 231 (1998); OAG, 1928-2930, p 582 (September 16, 1929). While these authorities do indeed use terms such as "suspect" and "accused," in none of these cases was the court or attorney general faced with the question presented here. It is clear that the terms were used in those cases merely as generic descriptions, not as specific limitations on who may be subject to tolling while residing out of state.

With respect to reason, we point out the obvious—an unreported crime is still a *crime*, and the victim of an unreported crime is still a *victim*. There may be any number of reasons why a crime is not initially reported, including a victim's age, vulnerability, or fear, or the lack of corroborating witnesses or physical evidence. The state certainly has an interest in discovering previously unreported crimes, as well as subsequently investigating and prosecuting them. Cf *March*, 395 SW3d at 787 (holding that "the State's interest in *detecting* crime and punishing offenders is compelling" (emphasis added)); *Sher*, 149 Wis 2d at 16 (observing that the "statute is substantially related to the state's interests in the *detection* of crimes, and the identification and apprehension of criminals" (emphasis added)); *Scherling v Superior Court of Santa Clara County*, 22 Cal 3d 493, 503; 585 P2d 219 (Cal, 1978) (concluding that "the Legislature could have determined that the *detection* of the crime and identification of the criminal are more likely if the criminal remains in the state than if he departs" (emphasis added)).

Moreover, it is certainly conceivable that an unreported crime will more likely be discovered when the guilty party resides within the state where the crime occurred. A chance encounter between the guilty party and the victim, a casual conversation between the guilty party and someone with knowledge of the victim or circumstances, or a relatively minor traffic infraction leading to a confession, are just several circumstances in which residing in the same state where the crime occurred could increase the chance of local law enforcement discovering an unreported crime. Proximity often leads to discovery.

Defendant is correct that a "purely hypothetical" criminal act cannot serve as a rational basis for distinguishing between residents and nonresidents. Yet, the prosecutor's case here does not rest on a "purely hypothetical" claim. Rather, the prosecutor presented sufficient evidence to establish that there was probable cause to believe that defendant sexually assaulted the complainant. Whether the passage of time or delay in reporting undermines the prosecutor's case is a question for the jury, not for this Court on appeal.

Finally, we do recognize that there is some tension between applying the tolling provision in this case and the general interests served by a statute of limitations. As explained by the federal Supreme Court, "Such a limitation is designed to protect individuals from having to

defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Toussie v United States*, 397 US 112, 114-115; 90 S Ct 858; 25 L Ed 2d 156 (1970). By tolling the limitations period for nonresidents in cases like this one, there is an increased risk that basic facts might become obscured with the passage of time. Yet, this is an increased risk faced in *all* situations involving nonresidents. In the face of this risk, the Legislature has seen fit to draw a distinction between residents and nonresidents and, for the reasons set forth above, it had a rational basis for doing so. As there is no suggestion that the Legislature or prosecutor was motivated by animus or ill-will, defendant's as-applied, "class of one" equal-protection claim must fail.

## III. CONCLUSION

The Legislature distinguishes between Michigan residents and nonresidents for purposes of tolling the statute of limitations for certain crimes. There are rational grounds for doing so, including the investigation, prosecution, and, indeed, the very discovery of previously unreported crimes. Given this, it is not a violation of defendant's right to interstate travel or equal protection to charge him with CSC-III related to alleged criminal conduct not reported until after the untolled limitations periods had expired. Accordingly, we reverse the trial court and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ William B. Murphy
/s/ David H. Sawyer