*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW JOSEPH CONNOLLY,

        Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 364104
Genesee Circuit Court
LC No. 2019-045615-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM LOUIS GOODMAN,

        Defendant-Appellant.

No. 364105
Genesee Circuit Court
LC No. 2019-045621-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAUREN BRICE HANDY,

        Defendant-Appellant.

No. 364106
Genesee Circuit Court
LC No. 2019-045623-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

-1-

v                                                                    No.   364107
                                                                     Genesee Circuit Court
PATRICE WOODWORTH-CRANDALL,                                           LC No.   2019-045627-FH

                 Defendant-Appellant.

_____

Before:  GARRETT, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Violence is not required to support a conviction of resisting or obstructing a police officer; interfering with one's arrest by going limp and requiring officers to carry one away suffices.  In these consolidated appeals,[1] a jury convicted four defendants—Matthew Joseph Connolly, William Louis Goodman, Lauren Brice Handy, and Patrice Woodworth-Crandall—of one count each of resisting or obstructing a police officer, MCL 750.81d(1); disturbing the peace, MCL 750.170; and trespass, MCL 750.552(1)(b); after they fell limp to the floor when ordered by police to exit the building or peacefully submit to their arrests.  Defendants raise several challenges on appeal revolving around their claimed constitutional right to exercise their religion by protesting inside a clinic that provides women with various healthcare services.  However, the prosecution presented sufficient evidence to support the convictions, the trial court properly instructed the jury, and the challenged resisting-or-obstructing statute is not unconstitutional, either facially or as applied.  Accordingly, we affirm defendants' convictions and 45-day jail sentences.

I.  BACKGROUND

The Women's Health Clinic (WHC) in Flint provides women with pregnancy-related services, such as ultrasounds and pregnancy testing.  It also provides abortion services.  In June 2019, defendants conducted a "red rose rescue," by entering the WHC, approaching clients in the waiting room, handing them a red rose, and attempting to convince them not to go forward with an abortion.  Defendants asserted these actions were driven by their Catholic faith.  Defendants did not know any of the clients in the WHC waiting room or what service they were at the clinic to receive.

A client reported defendants' actions to WHC manager, PLT.  PLT testified she had authority to remove anyone from the building at her discretion.  She used that discretion to eject defendants.  Defendants refused, even after all clients were removed from the waiting room, and police were summoned.  Michigan State Police Detective Trooper William Huey was the first to arrive on the scene.  After speaking with PLT, Trooper Huey called for backup to assist in removing defendants from the building.  One responding officer was tasked with recording events on a cell phone.  That recording was admitted into evidence at trial.  It showed defendants either sitting or kneeling and singing religious songs.  In the presence of the fully uniformed officers, PLT loudly informed defendants they were on private property, were no longer welcome, and were

_____

[1] *People v Connolly*, unpublished order of the Court of Appeals, entered January 17, 2023 (Docket Nos. 364104, 364105, 364106, and 364107).

being asked to leave. Defendants again refused to leave. An officer read a dispersal order, advising defendants they would be arrested if they stayed. Defendants remained firm.

Finally, the officers began their attempts to arrest defendants. They repeatedly commanded defendants to stand up, put their hands behind their backs, and walk out of the building. Defendants instead went limp and fell to the ground. The officers were forced to carry defendants from the building and place them into waiting patrol cars. During all of the above-mentioned events, other protesters were outside the WHC in a public area. They were never approached by police, instructed to leave, or arrested.

Defendants were charged with resisting or obstructing an officer (a felony), disturbing the peace, and trespass. After being bound over on the resisting-or-obstructing charge, defendants moved to quash, contending their acts of passive resistance did not violate the statute. Defendants also contended the charges violated their constitutional rights to freely exercise their religion and to equal protection of the law. The trial court denied the motion to quash. Defendants then moved to compel discovery of historical data regarding arrests and prosecutions for resisting or obstructing, which they believed would show law enforcement and the prosecution disparately enforced the statute against people acting on religious conviction. The trial court denied that motion, finding the evidence was not discoverable under MCR 6.201.

Before trial, defendants requested jury instructions regarding the defenses of necessity and defense of others. Defendants claimed they would present evidence that their actions were necessary to defend pregnant women and fetuses from impending harm. The trial court denied the pretrial motion. Defendants renewed the motion at trial, which commenced four days after the United States Supreme Court overruled *Roe v Wade*, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), in *Dobbs v Jackson Women's Health Org*, 597 US 215; 142 S Ct 2228; 213 L Ed 2d 545 (2022). The trial court continued to reject the requested jury instructions, determining *Dobbs* did not alter its reasoning. Defendants also requested an instruction regarding the term "occupant" as used in the trespassing statute. Effectively, defendants believed PLT was not an "occupant," and did not have authority to command them to leave. The trial court rejected this instruction as well.

At trial, defendants presented Monica Miller, Ph.D., an expert in Catholic theology. Miller described the red rose rescuers as defenders of innocent human lives. Once a rescuer makes a commitment to stop a facility from performing abortions, their moral conscience will not permit them to leave unless their goal is achieved. The rescuers also cannot assist in their own arrests as doing so would violate the moral absolute of opposing abortion.

The jury ultimately convicted defendants as charged and the court imposed 45-day jail sentences. These appeals followed.

-3-

## II. SUFFICIENCY OF THE EVIDENCE

Defendants argue the evidence was insufficient to support their convictions of resisting or obstructing an officer and trespassing.[2] Their challenges lack merit, however, as PLT was authorized to eject defendants, law enforcement officers repeatedly ordered defendants to leave, defendants ignored these commands, and defendant's "passive" resistance interfered with the officers' performance of their duties.

## A. STANDARD OF REVIEW

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), and in favor of the prosecution," *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). See also *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) ("It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences.").

To support a conviction, "[t]he prosecution need not negate every reasonable theory of innocence; instead, it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Mikulen*, 324 Mich App at 20. "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

## B. RESISTING OR OBSTRUCTING AN OFFICER

The prosecution presented sufficient evidence to sustain defendants' convictions of resisting or obstructing an officer, and defendants' claims that the statute does not apply to the facts of this case lack merit.

To support a conviction for resisting or obstructing under MCL 750.81d(1), the prosecution must prove: "(1) the defendant assaulted, battered, wounded, resisted, *obstructed*, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a

---

[2] Defendants also challenge the trial court's order denying their motion to quash the bindovers. However, "[a] defendant may not appeal whether the evidence at the preliminary examination was sufficient to warrant a bindover if the defendant was fairly convicted of the crimes at trial." *People v Green*, 313 Mich App 526, 530; 884 NW2d 838 (2015) (quotation marks and citation omitted).

police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010) (emphasis added). The Legislature defined the term "obstruct" as " 'the use or threatened use of physical interference or force or *a knowing failure to comply with a lawful command*.' " *People v Morris*, 314 Mich App 399, 408-409; 886 NW2d 910 (2016), quoting MCL 750.81d(7)(a) (emphasis added).

The cell-phone video admitted at trial showed law enforcement officers entering the WHC waiting room and surrounding defendants. PLT is heard telling defendants they are not welcome inside the building and need to leave. Defendants did not do so. The fully uniformed officers then ordered defendants to disperse within 30 seconds or face arrest for trespassing. Defendants again refused to leave. The officers informed defendants they were under arrest and ordered them to stand up and put their hands behind their backs. Defendants instead went limp and fell to the ground. Defendants ignored repeated orders to stand up and walk out of the facility. The officers ultimately carried defendants out.

Defendants were given lawful orders by law enforcement officers and refused to comply. This was obstruction as defined in MCL 750.81d(7)(a). Further, defendants' decision to "go limp" and refuse to stand up, requiring the officers to carry them, was "the use . . . of physical interference" with the officers performing their duties as contemplated in MCL 750.81d(7)(a). As the officers were in full uniform, defendants clearly knew they were ignoring the commands of law enforcement officers performing their duties. The prosecution thereby supported each element of resisting or obstructing.

Defendants claim, however, that a violation of MCL 750.81d(1) requires physical resistance, which was not fulfilled by their passive actions. This interpretation is contrary to the plain language of the statute. Obstruction can be proven by a failure to follow a lawful command or physical interference with an officer performing his or her duties. MCL 750.81d(7)(a). Defendants' "passive resistance" involved both ignoring the officers' lawful commands and physically interfering with the process of being arrested. Under the plain statutory language, this was obstruction.

Defendants cite United States Court of Appeals for the Sixth Circuit opinions, which they claim interpret MCL 750.81d(1) as requiring violent conduct for a conviction. "The decisions of intermediate federal courts are not binding on this Court, although they may be considered for their persuasive value." *People v Lucynski*, 509 Mich 618, 638 n 10; 983 NW2d 827 (2022). The cases relied upon by defendants do not persuade us to reach a different result.

The first case cited by defendants, *United States v Merchant*, 288 Fed Appx 261, 262-263 (CA 6, 2008), involved the Sixth Circuit's consideration of a sentence enhancement for a federal offense based on prior convictions for "crimes of violence." In a separate action, the defendant was convicted of violating MCL 750.81d(1) in 2005, and the Sixth Circuit considered whether this amounted to a violent crime. *Merchant*, 288 Fed Appx at 263. The Sixth Circuit concluded a violation of MCL 750.81d(1) "qualifies as a crime of violence because it categorically involves conduct that presents a serious potential risk of physical injury to another." *Id*. (quotation marks and citation omitted). Defendants effectively stop their analysis at this quote. However, the Sixth Circuit went on to explain: "Although a violation of [MCL 750.81d(1)] can occur non-violently through a person's knowing failure to comply with a lawful command, neither actual violence nor

-5-

an imminent threat of violence must occur before an offense can qualify as a crime of violence." *Merchant*, 288 Fed Appx at 263. Despite explicitly stating a violation of MCL 750.81d(1) can occur in a nonviolent manner, the Sixth Circuit then stated: "Additionally, the placement of this statute in the 'Assaults' chapter of the Michigan Penal Code evidences a legislative intent that [MCL 750.81d(1)] proscribe violent conduct as opposed to passive resistance." *Merchant*, 288 Fed Appx at 263. The Sixth Circuit did not explain its reasoning for its contradictory statements regarding MCL 750.81d(1), but it likely occurred because the Sixth Circuit was not addressing whether a conviction could be sustained under the statute. Instead, the Sixth Circuit merely was deciding whether a conviction under MCL 750.81d(1) qualified as a crime of violence according to the federal sentencing scheme. The intention of the Legislature to proscribe behavior that might put an officer at risk of harm made the crime one of violence, though an act of nonviolence could still be a violation of the statute. *Merchant*, 288 Fed Appx at 263-264.

In *United States v Mosley*, 575 F3d 603, 605 (CA 6, 2009), decided the next year, the Sixth Circuit considered whether MCL 750.81d(1) "contains a use-of-physical-force element. The court concluded: "It does not," explaining:

> An individual may violate the statute by committing any one of several prohibited actions, and at least one of the prohibited actions does not involve the use— attempted, threatened or real—of physical force. Under Michigan law, an individual "obstructs" an officer if he "knowing[ly] fail[s] to comply with a lawful command," [MCL] 750.81d(7)(a), which he may do without attempting or threatening to use force. [*Mosley*, 575 F3d at 606.]

As *Mosley* was published and *Merchant* was not, there can be no dispute regarding which case would be binding on future courts in the circuit. *United States v Flores*, 477 F3d 431, 433-434 (CA 6, 2007) ("[T]he panel's decision was unpublished and, therefore, not binding."). Even so, these cases do not necessarily disagree in that both indicate a defendant can violate MCL 750.81d(1) by acting in a nonviolent manner. These cases do not further defendants' cause.

Defendants also rely on Sixth Circuit caselaw to support that the United States Constitution does not require them to assist in their own arrest. In *St John v Hickey*, 411 F3d 762, 773 (CA 6, 2005), abrogated in part on other grounds *Marvin v City of Taylor*, 509 F3d 234 (CA 6, 2007), the Sixth Circuit stated: "The Fourth Amendment does not require [an individual] to assist in his own arrest . . . ." However, the court also noted the Fourth Amendment "may require deference to officers' election to use force when attempting to subdue and transport a violent or out-of-control suspect." *St John*, 411 F3d at 773. The analysis in *St John* was related to an arrestee's civil suit for damages under 42 USC 1983, not whether the arrestee had committed a crime by resisting or obstructing an officer. *St John*, 411 F3d at 768. The Sixth Circuit addressed the reasonableness of the officers' actions during the arrest in the face of an allegation of "excessive force." *St John*, 411 F3d at 771. *St Johns* is inapplicable in this case because there is no allegation of excessive force. Rather, defendants contend they could not be charged with resisting or obstructing even though the officers were required to use physical force to remove them from the WHC.

Defendants also cite *Morris*, 314 Mich App at 399, to support their claim that physical violence is required for a conviction under MCL 750.81d(1), but cite only the language that benefits their position. In *Morris*, 314 Mich App at 405, this Court considered whether MCL

750.81d(1) was unconstitutional for being facially overbroad. The defendant's primary argument was that the language of the statute was so broad "it is possible that asking simple questions of an officer could be construed as criminal." *Morris*, 314 Mich App at 405. The defendant asserted this was problematic because such speech generally is protected under US Const, Am I. *Morris*, 314 Mich App at 405-406. This Court determined the statute was not facially overbroad because, read in the appropriate context, the statute did not allow for a conviction solely on the basis of constitutionally protected speech. *Id*. at 411 ("[W]e hold that the statute is not facially overbroad because state actors cannot under this statute arrest and convict persons for only utilizing constitutionally protected words in opposition to the actions of, for example, a police officer."). With respect to the definition of "obstruct," which can be fulfilled without violent behavior from a defendant, this Court reasoned "it is enough to say that obstructing an officer through a knowing failure to comply with a lawful command requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement." *Id*. at 409 n 6 (quotation marks and citation omitted).

Defendants were not charged with and convicted of resisting or obstructing an officer solely on the basis of "a mere verbal statement of disagreement." *Id*. Instead, defendants were charged with and convicted of the offense because they were given lawful commands to stand up, place their hands behind their backs, and exit the WHC, but refused to do so. Defendants did not simply voice disagreement with this command, they refused to follow it. There was sufficient evidence to establish defendants engaged in "some physical refusal to comply with a command," which undisputedly violates MCL 750.81d(1). *Morris*, 314 Mich App at 409 n 6. Because defendants were not prosecuted solely on the basis of constitutionally protected speech, reliance on *Morris* in this regard is misplaced.

## C. TRESPASSING

The prosecution also presented sufficient evidence to support defendants' trespassing convictions. MCL 750.552(1)(b) proscribes remaining on property "without lawful authority . . . after being notified to depart by the owner or occupant or the agent of the owner or occupant." Defendants claim PLT was not the "legal occupant" of the WHC and lacked authority to order them to leave.

The trespassing statute did not require PLT to be a legal occupant. MCL 750.552(1)(b) clearly states a command to leave the premises can come from "the agent of the owner or occupant." An "agent" is "[s]omeone who is authorized to act for or in place of another; a representative[.]" *Black's Law Dictionary* (11th ed). PLT testified she was granted authority from the WHC owner to remove people from the business at her discretion. There is no dispute the owner of the WHC possessed and controlled the property. Because the evidence admitted at trial supported that PLT was the WHC owner's agent, instructed defendants to leave, and they refused to do so, there was sufficient evidence to sustain defendants' convictions of trespassing as well.

## III. CONSTITUTIONAL ISSUES

Defendants argue the charges of resisting or obstructing an officer should have been dismissed on an array of constitutional grounds. These challenges lack merit.

## A. STANDARD OF REVIEW

We review de novo constitutional questions. *People v Bennett*, 344 Mich App 12, 16; 999 NW2d 827 (2022). "[W]e review de novo challenges to the constitutionality of a statute under the void-for-vagueness doctrine." *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017). "De novo review means that we review the issues independently, with no required deference to the trial court." *People v Jarrell*, 344 Mich App 464, 473; 1 NW3d 359 (2022) (quotation marks and citation omitted).

## B. OVERBREADTH AND VAGUENESS

Defendants first argue the resisting-or-obstructing charges should have been dismissed because the statute is overly broad and unconstitutionally vague. Initially, any claim that the statute is facially overbroad must fail under *Morris*, 314 Mich App at 412, which held: "Properly construed, MCL 750.81d is not constitutionally overbroad."

Defendants' more clear contention is that the statute was unconstitutionally vague as applied to them. "The void-for-vagueness doctrine is based upon the principle that there is a denial of due process if the statute's prohibitions are not clearly defined." *People v Schurr*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365104); slip op at 10. "A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms." *People v Miller*, 326 Mich App 719, 738; 929 NW2d 821 (2019). Defendants argue MCL 750.81d is unconstitutionally vague because it does not provide fair notice that refusing to assist in one's own arrest can be a felony. "Fair notice exists when the statute's meaning can be determined by referring to judicial interpretations, common law, dictionaries, treatises, or the common meanings of words." *Miller*, 326 Mich App at 738.

As previously noted, the elements of resisting or obstructing an officer are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *Corr*, 287 Mich App at 503. Also as previously noted, "the Legislature defined the term 'obstruct' to mean 'the use or threatened use of physical interference or force or *a knowing failure to comply with a lawful command*.' " *Morris*, 314 Mich App at 408-409 (emphasis added), quoting MCL 750.81d(7)(a).

Defendants contend the statute does not inform a reasonable person that refusing to assist in their own arrest would be a criminal violation. This ignores the definition of "obstruct" provided in the statute, which includes "knowing[ly] fail[ing] to comply with a lawful command" of an officer. MCL 750.81d(7)(a). A reasonable person would understand this language to mean that, once being informed they are under arrest, a defendant is required to follow the lawful commands of the arresting officer and not interfere with the arrest. A person who refused to place their hands behind their back, stand up, and walk out of a building would be ignoring lawful commands and obstructing an officer performing his or her duty of arresting criminals. Defendants did not have

to go beyond the language of the statute under which they were charged to discover their actions were criminal in nature and their constitutional vagueness claim lacks merit.

## C.  FREE EXERCISE OF RELIGION

Defendants next argue their resisting-or-obstructing convictions violate their constitutional right to freely exercise their religion.  "Statutes are presumed to be constitutional, and we have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).  "[A]ssuming that there are two reasonable ways of interpreting [a statute]—one that renders the statute unconstitutional and one that renders it constitutional—we should choose the interpretation that renders the statute constitutional." *People v Skinner*, 502 Mich 89, 111; 917 NW2d 2929 (2018).  The Free Exercise Clause of US Const, Am I "proclaims: 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .' " *People v DeJonge*, 442 Mich 266, 273; 501 NW2d 127 (1993.  "Section 1 of the Fourteenth Amendment of the United States Constitution applies the First Amendment to the individual states." *Id*. at 273 n 8.

"At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye, Inc v City of Hialeah*, 508 US 520, 532; 113 S Ct 2217; 124 L Ed 2d 472 (1993).  "In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id*. at 531.  "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id*. at 533.  Defendants do not dispute that MCL 750.81d(1) is facially neutral because it does not refer to religion in any manner.  However, "[f]acial neutrality is not determinative." *Church of Lukumi Babalu Aye*, 508 US at 534.  While a law plainly targeting a religion obviously is not neutral, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law [also] is not neutral[.]" *Id*. at 533.

When considering "the object of a law," courts must first consider the language of the relevant statute.  *Id*.  As noted, MCL 750.81d is facially neutral as to religion.  Next, courts must address other dangers meant to be protected by the Free Exercise Clause: "The Clause forbids subtle departures from neutrality, and covert suppression of particular religious beliefs." *Church of Lukumi Babalu Aye*, 508 US at 534 (quotation marks and citations omitted).  "The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders." *Id*. (quotation marks and citation omitted).  In *Church of Lukumi Babalu Aye*, 508 US at 534-536, the United States Supreme Court determined a set of ordinances targeted a specific religion—Santeria—despite facially neutral language regarding the ritualistic killing of animals.  The Supreme Court noted: "The net result of the gerrymander is that few if any killings of animals are prohibited other than Santeria sacrifice, which is proscribed because it occurs during a ritual or ceremony and its primary purpose is to make an offering . . ., not food consumption." *Id*. at 536.

Defendants rely almost entirely on the Supreme Court's opinion in *Church of Lukumi Babalu Aye* to support their contention that MCL 750.81d violates their freedom to exercise their

religion. But defendants have taken an overly broad view of the case as it pertains to the protection of religion. While there was abundant evidence in *Church of Lukumi Babalu Aye* that the purpose of the proscriptions was to target a specific religion despite facial neutrality, the record in this case contains no such evidence. The language of MCL 750.81d is facially neutral, and defendants have not identified any possible legislative intent directed at individuals who practice Catholicism, or even those who oppose abortion on religious grounds. Indeed, even a brief review of recent caselaw from this Court reveals MCL 750.81d is regularly used to prosecute individuals for reasons completely unrelated to religious beliefs.[3]

Defendants suggest MCL 750.81d could be used to prosecute people exercising religious beliefs in the form of protests while ignoring other violators. For example, defendants assert that officers sometimes must carry intoxicated or disabled people out of buildings when they are arrested on other offenses and yet do not charge them with resisting or obstructing. "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton v Philadelphia*, 593 US 522, 533; 141 S Ct 1868; 210 L Ed 2d 137 (2021). Defendants cite no "mechanism" within the statute "for individualized exemptions." Further, defendants fail to acknowledge the difference between their cited examples and the facts of this case. Specifically, when asked at trial, the officers described situations where individuals could not physically comply with their orders and, therefore, were not charged with resisting or obstructing. Defendants were physically able to comply with the officers' orders, and their failure to do so amounted to a statutory violation.

Defendants have not successfully rebutted that MCL 750.81d is facially neutral and that the Legislature did not have discriminatory objectives when enacting the statute. Accordingly, contrary to defendants' contentions, we need not apply strict-scrutiny review in this case. See *Church of Lukumi Babalu Aye*, 508 US at 531. Rather, the purpose of MCL 750.81d is to protect law enforcement officers while performing their official duties. *Morris*, 314 Mich App at 411 ("[W]e conclude that MCL 750.81d is designed to protect persons in the identified occupations, MCL 750.81d(7)(b), who are lawfully engaged in conducting the duties of their occupations, from physical interference or the threat of physical interference."). Defendants do not dispute that this is a valid governmental concern.

"Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction

---

[3] See *People v Johnson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362236); slip op at 1 (where the defendant resisted or obstructed an officer by taking "his girlfriend's car, [leading] police officers on a high-speed chase, crash[ing] the vehicle into a police car, and [running] from the police, who eventually captured him"); *People v Murawski*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365852); slip op at 1-3 (where the defendant drunkenly refused to provide his identification to a police officer and resisted the subsequent arrest); *People v Flores*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 360584); slip op at 1-2 (where the defendant began a verbal and physical altercation with police when they responded to a domestic incident).

of religious beliefs." *Minersville Sch Dist v Gobitis*, 310 US 586, 594; 60 S Ct 1010; 84 L Ed 1375 (1940). As succinctly stated by the Supreme Court: "Respondents urge us to hold, quite simply, that when otherwise prohibitable conduct is accompanied by religious convictions, not only the convictions but the conduct itself must be free from governmental regulation. We have never held that, and decline to do so now." *Employment Div, Dep't of Human Resources of Oregon v Smith*, 494 US 872, 882; 110 S Ct 1595; 108 L Ed 2d 876 (1990), superseded by statute on other grounds as stated in *Ramirez v Collier*, 595 US 411, 424; 142 S Ct 1264; 212 L Ed 2d 262 (2022).[4] Accordingly, defendants' free exercise challenge lacks merit.

## D. EQUAL PROTECTION

Defendants' contention that their right to equal protection of the law was violated is also without merit. "The United States and the Michigan Constitutions guarantee equal protection of the law." *People v Pitts*, 222 Mich App 260, 272; 564 NW2d 93 (1997). "In essence, equal protection requires that persons be treated alike with respect to certain, largely innate, characteristics that do not justify disparate treatment." *People v James*, 326 Mich App 98, 105; 931 NW2d 50 (2018) (quotation marks and citation omitted). In other words, "equal protection requires that persons in similar circumstances be treated similarly." *Pitts*, 222 Mich App at 272. "To be similarly situated to an identified group, defendant must show that he is comparable in all material respects to the members of that group." *James*, 326 Mich App at 106. "If he cannot establish that he was treated unequally in some material way, then there is no violation of equal protection." *Id*.

Defendants have not identified a similarly situated group compared to which they were "treated unequally in some material way[.]" *Id*. Again, defendants contend they are similarly situated to individuals who have to be carried out of a building when arrested because they are extremely intoxicated or physically disabled. In other words, defendants insist the "material respects" for being similarly situated are those who *must* be carried from a place when arrested. Defendants are not similarly situated to the extremely intoxicated or physically disabled because defendants *could* walk out under their own power, but chose not to do so.

Instead, defendants are actually similarly situated to other religious protesters. As noted above, someone similarly situated for purposes of comparison under the Equal Protection Clause must be "comparable in all material respects to the members of that group." *Id*. Defendants contend they are being treated differently on the basis of their religion, but other religiously motivated individuals were protesting the same cause *outside* the WHC on the day in question without interference from the police. The material difference between those two groups is defendants trespassed *inside* the clinic and then refused to leave, while the other protesters remained in public spaces near the street. This establishes the police officers were not focusing on defendants because of their religion, but because they trespassed, knowingly ignored lawful commands to leave, and physically interfered with their own arrests. Because defendants "cannot

---

[4] In *Fulton*, 593 US at 533, the United States Supreme Court specifically held it was not overruling *Smith*, 494 US at 878-882.

establish that [they were] treated unequally in some material way, then there is no violation of equal protection." *Id*.

Our decision is supported by a relatively recent opinion, albeit unpublished,[5] from the Sixth Circuit. In *Thames v Westland*, 796 Fed Appx 251, 265-266 (CA 6, 2019), the Sixth Circuit considered a claim from an abortion protester that her right to equal protection was violated after she was arrested for purportedly making a bomb threat outside a women's health facility. The plaintiff made the bomb threat in front of the facility's security guard, who summoned police. *Id*. at 254. The security guard identified the plaintiff at the scene as the individual who used the word "bomb." *Id*. at 254-255. Another protester was present but was not involved in the bomb threat. *Id*. at 254. The officers arrested only the plaintiff, and she claimed this arrest violated her right to equal protection. *Id*. at 265. The Sixth Circuit reasoned, in relevant part:

> [The plaintiff] also raised an equal-protection claim on the basis that the officers did not arrest [the security guard] for saying "bomb" but arrested her for saying "bomb," contending that this was solely because she was exercising her fundamental First Amendment right to protest abortion. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis," with "the threshold element" being "disparate treatment." *Ctr for Bio-Ethical Reform, Inc v Napolitano*, 648 F3d 365, 379 (CA 6, 2011) (quotation marks and citations omitted). But [the security guard] was neither protesting nor making threats; he was on the job as a security guard. [The plaintiff] was not similarly situated to [the security guard]. Moreover, [the plaintiff] was not similarly situated to the other protesters . . . because those other protesters did not vocalize any bomb threat. There is no "fundamental right" to make a bomb threat. It was because of the bomb threat that the police arrested [the plaintiff] but not the other protesters. There is a rational basis for differentiating between people who voice bomb threats and everyone else. [*Thames*, 796 Fed Appx at 265-266.]

Although the current defendants did not make any threats, they did trespass on private property, remaining after being asked to leave. Then, when placed under arrest, defendants refused to follow lawful commands and physically interfered with their arrests. Like in *Thames*, defendants were arrested because they committed a crime, not because of their religion. And like in *Thames*, we must disregard defendants' attempts to liken themselves to groups that are not actually similarly situated. Defendants have not adequately supported their equal-protection claim and are not entitled to relief.

---

[5] An unpublished opinion of the Sixth Circuit is not binding on this Court or the Sixth Circuit itself. *Flores*, 477 F3d at 433-434 (CA 6, 2007) ("[T]he panel's decision was unpublished and, therefore, not binding.").

IV. DISCOVERY

A. STANDARDS OF REVIEW

Defendants contend the trial court erred in denying their request to discover historical data regarding the application of MCL 750.81d. "We review for an abuse of discretion a trial court's decision on a motion to compel or limit discovery." *People v Antaramian*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362604); slip op at 3. "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *People v Jack*, 336 Mich App 316, 322; 970 NW2d 443 (2021) (quotation marks and citation omitted).

"[T]he interpretation of a court rule presents a question of law that we review de novo." *People v Masi*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 358922); slip op at 11 (quotation marks and citation omitted). We apply the rules of statutory construction to interpret court rules, interpreting and applying the court rule according to its plain and unambiguous language. *Jack*, 336 Mich App at 322.

B. LAW AND ANALYSIS

The trial court did not abuse its discretion when it denied defendants' motion to compel discovery. " 'There is no general constitutional right to discovery in a criminal case.' " *Masi*, ___ Mich App at ___; slip op at __, quoting *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). Instead, "[d]iscovery in criminal matters is governed by MCR 6.201." *Antaramian*, ___ Mich App at ___; slip op at 3.

MCR 6.201(B)(1) states: "Upon request, the prosecuting attorney must provide each defendant . . . any exculpatory information or evidence known to the prosecuting attorney[.]" Exculpatory evidence is defined as "[e]vidence tending to establish a criminal defendant's innocence." *Black's Law Dictionary* (11th ed). Contrary to defendants' contention, the requested historical data was not exculpatory and was not discoverable under MCR 6.201(B)(1).

Defendants twice sought to have the resisting-or-obstructing charges dismissed, asserting the government disparately enforced MCL 750.81d(1) on the basis of religion. To support this claim, defendants moved the trial court to compel the prosecution to provide the following evidence:

> 7. A copy of all police reports involving individuals who were arrested for, and/or charged with, violating MCL 750.81d(1) within the past 10 years.

> 8. A copy of all convictions under MCL 750.81d(1) within the past 10 years.

> 9. A copy of all police reports involving any individual who had to be physically carried by a police officer, or someone working with a police officer, such as an [emergency medical technician (EMT)], to a police vehicle incident to the individual's arrest within the past 10 years. This request specifically includes, but is not limited to, any arrests of individuals who were involved in protest activity

and/or engaged in "passive resistance," including any arrests related or incident to labor or other union related protests or activity.

Defendants insisted this material would have supported their constitutional defenses by showing the government did not arrest or charge individuals for resisting or obstructing when those individuals were not exercising their freedom of religion.

The subject materials were not exculpatory because they did not tend to prove defendants' innocence. Instead, defendants sought the evidence to support a defense to excuse their otherwise illegal actions. As noted previously, defendants claimed officers do not arrest people for resisting or obstructing when they have to be physically carried away due to extreme intoxication or physical disability. As already discussed, these individuals would not be similarly situated to defendants. Accordingly, even if the subject materials contained the exact information imagined by defendants, it would not warrant dismissal of the charges against them.

Defendants argue the evidence was discoverable under MCR 6.201(I), which states "[o]n good cause shown, the court may order a modification of the requirements and prohibitions of this rule." This court rule allows a criminal defendant to justify a request for discovery of materials not otherwise discoverable under the court rules by establishing good cause. *People v Phillips*, 468 Mich 583, 588-589; 663 NW2d 463 (2003); *People v Greenfield (On Reconsideration)*, 271 Mich App 442, 448; 722 NW2d 254 (2006). "Absent such a showing, courts are without authority to order discovery in criminal cases." *Greenfield*, 271 Mich App at 448.

Defendants contend they have good cause to request the evidence because they established a reason to believe there was disparate treatment under the resisting-or-obstructing statute on the basis of religious exercise. Defendants cite the officers' testimonies that they were uncertain whether they had charged extremely intoxicated individuals with resisting or obstructing when an officer had to physically carry those individuals, and that they would not charge a physically disabled person under those circumstances. Again, neither the extremely intoxicated nor physically disabled are similarly situated to the current defendants. Even if the materials contain the exact information predicted by defendants, it would not assist their position. Accordingly, defendants cannot establish good cause to require discovery.

Furthermore, with this discovery request, defendants essentially petitioned the prosecution to develop a defense for it. "Neither the prosecution nor the defense has an affirmative duty to search for evidence to aid the other's case." *People v Burwick*, 450 Mich 281, 289 n 10; 537 NW2d 813 (1995). The prosecution has a duty to *disclose* evidence but it does not have a duty to "develop evidence in the first instance." *People v Stephens*, 58 Mich App 701, 705; 228 NW2d 527 (1975).[6] Even though the prosecution "is required to disclose evidence that has been developed, it is not required to develop evidence . . . that defendant hopes will provide him with a

---

[6] Opinions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are generally afforded some deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

defense." *People v Green*, 310 Mich App 249, 256; 871 NW2d 888 (2015), citing *Stephens*, 58 Mich App at 705-706.

The concern discussed in *Green* applies directly in this case. Defendants want the prosecution to scour police and prosecution records to determine in what circumstances individuals have been charged with and prosecuted for resisting or obstructing an officer. The prosecution would have to develop that evidence into relevant statistics before presenting it to the defense. Michigan's discovery rules do not require such extensive work by the prosecution solely for the benefit of the defense.

The evidence requested by defendants was not discoverable under MCR 6.201(B)(1) or (I). The trial court acted within its discretion in denying defendants' motion to compel and defendants are not entitled to relief.

## V. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Defendants contend the trial court erred in denying their requests for various jury instructions. Generally, "[c]laims of instructional error are reviewed de novo." *People v Montague*, 338 Mich App 29, 37; 979 NW2d 406 (2021). "This Court reviews the trial court's determination whether a jury instruction is applicable to the facts of the case for an abuse of discretion." *Id*. (quotation marks and citation omitted).

### B. GENERAL LAW

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citation omitted). "The trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Montague*, 338 Mich App at 37 (cleaned up). In other words, "[o]ne of the essential roles of the trial court is to present the case to the jury and to instruct it on the applicable law with instructions that include . . . any material issues, defenses, and theories that are supported by the evidence." *People v Craft*, 325 Mich App 598, 606-607; 927 NW2d 708 (2018) (quotation marks and citation omitted). "Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995) (citation omitted), mod 450 Mich 1212 (1995).

### C. DEFENSE OF OTHERS

Defendant first claims the trial court should have instructed the jury regarding defense of others. The Legislature codified the defense-of-others doctrine in MCL 780.972(2), which states:

> An individual who has not or *is not engaged in the commission of a crime* at the time he or she uses force other than deadly force may use force other than deadly force against another individual *anywhere he or she has the legal right to*

*be with no duty to retreat* if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [Emphasis added.]

Common-law defense of defense of others also still exists: "But aside from limiting one's duty to retreat, the statute did not modify or abrogate the common-law defenses of self-defense or defense of others." *People v Leffew*, 508 Mich 625, 641; 975 NW2d 896 (2022). In *Leffew*, 508 Mich at 638-639, our Supreme Court provided a recent and pertinent discussion of the law related to a defense-of-others defense:

> Under the defense-of-others doctrine, one may use force in defense of another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm; deadly force is permissible to repel an attack which reasonably appears deadly. As with self-defense, defense of others is generally not available to a person who is the initial aggressor.

> Though invoked less commonly than its more popular sibling, self-defense, the defense-of-others doctrine has deep roots in Michigan jurisprudence. In 1860, we addressed the narrow class of excusable homicides and noted that the accused in such cases acts in the defense of his own life, or that of his family, relatives or dependants [sic], within those relations where the law permits the defense of others as of one's self. In the century and a half [since], Michigan courts have repeatedly recognized the common-law defense-of-others doctrine. [Cleaned up.]

Whether under the statute or the common law, defendants were not entitled to a defense-of-others instruction. In the statute, to be entitled to the defense, the defendant must not have been "engaged in the commission of a crime at the time he or she uses force," and the force at issue must protect "another individual from the imminent unlawful use of force by another individual." MCL 780.972(2). Under the common law, "[o]ne may use force in defense of another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm[.]" *Leffew*, 508 Mich at 638 (quotation marks and citation omitted). As with the statute, the Court later clarified the person to be protected must be facing an imminent threat of *unlawful* harm. *Id*. at 649. Further, under the statute, the individual employing the defense of others, must have a legal right to be present in the location.

Defendants were engaged in the commission of a crime—trespass—and were not somewhere they had a legal right to be—they had been asked to leave and became trespassers. Further, defendants were not protecting anyone from the imminent threat of unlawful force. On the day of defendants' protests and arrests, abortion was legal in Michigan. Accordingly, if a client visited the WHC for abortion services, neither she nor the fetus would be in danger of unlawful force. Therefore, the defense-of-others instruction was not applicable.

Defendants go to great lengths to argue the WHC clients and their unborn fetuses were in danger of unlawful force because the United States Supreme Court reasoned in *Dobbs* that earlier decisions incorrectly extended constitutional protection to abortions. Even if defendants' position is true, it would not justify a defense-of-others instruction because defendants were trespassers with no legal right to be inside the WHC and therefore could not use force to protect anyone.

Defendants also argue they were entitled to a defense-of-others instruction because Michigan public policy favors the protection of fetuses. Defendants' argument is based on Michigan's fetal protection act, MCL 750.90a *et seq*. This Court has held that "the act reflects a public policy to protect even an embryo from unlawful assaultive or negligent conduct." *People v Kurr*, 253 Mich App 317, 323; 654 NW2d 651 (2002). This Court also held, however, that the defense-of-others doctrine only applies to the protection of a fetus or embryo "*solely* in the context of an assault against the mother." *Id*. There was no threat of assault against any pregnant mother in the WHC waiting room. Accordingly, the fetal protection act did not grant defendants the right to act in defense of others.

Defendants also contended they were entitled to act in the defense of others to protect the WHC clients from being forced to undergo abortions under coercion or without informed consent. However, a jury instruction regarding a defense is only required when it is supported by the evidence. *Mills*, 450 Mich at 81. There was no evidence that any client in the WHC waiting room had been coerced or lacked informed consent. Indeed, the clients were complete strangers to defendants, and defendants did not know if the clients were seeking abortion services or some other service, nor did the defendants know whether anyone was being coerced or lacked informed consent for any service that was being sought.

Under these circumstances, defendants were not entitled to a defense-of-others jury instruction.

## D. NECESSITY

Next, defendants argue the trial court should have instructed the jury about the defense of necessity. Defendants rely on *People v Hubbard*, 115 Mich App 73, 77; 320 NW2d 294 (1982), in which this Court stated: "We are aware of no Michigan case in which necessity was allowed as a defense to a criminal trespass action." However, this Court remarked it had previously "impliedly recognized the defense of necessity." *Id*. The difference between the defenses of duress and necessity in those early cases was that "the source of compulsion for duress is the threatened conduct of another human being, while the source of compulsion for necessity is the presence of natural physical forces." *Id*. (quotation marks and citation omitted). The Hubbard Court held: "We are of the opinion that, in an appropriate factual situation, a defense of necessity may be interposed to a criminal trespass action. However, there must be some evidence from which each element of such defense may be inferred before the defense may be considered by a trier of fact." *Id*. "[T]he defense of necessity requires a well- grounded apprehension or reasonable fear of harm." *Id*. at 78 (quotation marks omitted).

In *Hubbard*, 115 Mich App at 78, the defendant was arrested for trespass while protesting on the property of a nuclear power plant. This Court determined the defendant could not claim a need to trespass to protect because:

> The necessity defense is unavailable in an area where there has been exhaustive legislative debate and legislation. The law, by allowing the application of a necessity defense, cannot permit an individual to substitute his own convictions for those of a reasoned and democratic decision-making process. To do so would subvert the very process by which a democracy functions. [*Id*. at 79.]

The evidence similarly does not support a necessity defense in this case. The right to abortion has been subject to exhaustive debate for decades. There is no evidence that defendants needed to trespass inside the WHC on the day in question to effectively protest. As we have stated multiple times above, on the day of defendants' actions, several other protesters remained outside in a public space and there is no evidence at all that law enforcement officers took actions to limit the exercise of those protestors' rights in any way. Defendants cannot establish their entitlement to this defense and cannot establish the court erred in denying their request for the jury instruction.

## E.  LEGAL OCCUPANT

Finally, defendants contend they were entitled to a special jury instruction about the definition of "legal occupant" in the trespassing statute. The alleged need for this instruction arises from defendants' claim that PLT was not the legal occupant of the WHC and therefore lacked authority to order their exit. However, as previously explained, MCL 750.552(1)(b), permits an agent of the owner or legal occupant to order trespassers to leave the premises. And PLT was such an agent. Accordingly, the definition of "legal occupant" was not relevant in this case and defendants were not entitled to the requested instruction.

We affirm defendants' convictions and sentences.

/s/ Kristina Robinson Garrett
/s/ Deborah A. Servitto
/s/ James Robert Redford

-18-