*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 15, 2025
11:53 AM

Plaintiff-Appellee,

v

No. 363034
Wayne Circuit Court
LC No. 20-000176-01-FH

ANTHONY CHILDS,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

Defendant, Anthony Childs, appeals as of right his jury trial convictions of assault with intent to do great bodily harm less than murder or by strangulation, MCL 750.84, and domestic violence, MCL 750.81(2).[1] Following a motion for resentencing, Childs was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 30 years' imprisonment for the assault with intent to do great bodily harm less than murder or by strangulation conviction and one day for the domestic-violence conviction. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

In December 2019, Childs assaulted his ex-girlfriend, Gail Davis, multiple times over a period of hours. The assaults occurred at multiple locations, including inside a vehicle, at Davis's house, and outside and inside of a garage at a house on Manor Street. Childs assaulted Davis by punching, kicking, strangling, and throwing her to the ground. Davis also testified that Childs held a gun to her head and threatened to kill her. She stated that he even pulled the trigger, but that the gun did not fire. At times, Davis was able to retrieve her cellular telephone, which allowed her to make multiple calls to 9-1-1. She did not speak during the calls, but during at least some of the calls a disturbance could be heard. Eventually, Childs took Davis to her home, where her adult

---

[1] The jury found that Childs was not guilty of unlawful imprisonment, MCL 750.349b, felon in possession of a firearm, MCL 750.224f, assault with a dangerous weapon, MCL 750.82, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b.

-1-

children were sleeping. Childs and Davis went to Davis's bedroom. When Childs appeared to be asleep, Davis wrote a note to her adult daughter stating that she was being held hostage by Childs, that he had a gun, and directing her to call the police in two hours. The daughter called 911 immediately because she was afraid. Further, other individuals contacted 911 after learning from the daughter that Davis was being held hostage. The police responded to Davis's home. The children left the home through a window, Davis walked out the front door, and Childs was eventually arrested. This appeal follows.

## II. SUPPRESSION OF EVIDENCE

### A. STANDARD OF REVIEW

Childs argues that his constitutional right to due process was violated because the prosecution suppressed evidence of Davis's criminal history. "We review de novo a defendant's constitutional due process claim." *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

### B. ANALYSIS

To establish a due process violation arising from the failure to disclose evidence, a defendant must show that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

Childs argues that the prosecution suppressed a nonpublic court file involving a charge of identity theft against Davis. The prosecution conceded that if the file had been a public record it would have turned it over as part of its response to Childs's discovery request for Davis's criminal history. The trial court, after an in camera review, held that Davis had not been convicted of identity theft as the matter had been dismissed under a diversion program. Given the record in this case it is apparent that, although Davis was not convicted, her nonpublic file was part of her criminal history and it was suppressed by the prosecution.

Reversal, however, is not warranted because the evidence was not favorable to the defense. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. Evidence that Davis had been charged with identity theft and that the charges were dismissed are not exculpatory to Childs. Further, such evidence could not be used for impeachment. MRE 609(a) provides for impeachment of a witness by evidence of a *criminal conviction*.[2] But Davis was not convicted. Also, the matter was resolved in 2007, which was more than 10 years before trial, so even if the proceeding was deemed to involve a conviction, it could not have been used for impeachment. See MRE 609(c) ("Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later."). Childs surmises

---

[2] The Michigan Rules of Evidence were amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxxxvii (2023). This opinion relies on the version of the court rules that were in effect at the time of Childs's trial.

that disclosure of the nonpublic court record could have helped him obtain other evidence that he could have used to attack Davis's credibility. However, a defendant cannot meet his burden of showing that suppressed evidence was favorable to the defense by speculating that it might have led to the discovery of unspecified impeachment evidence.

Finally, the nonpublic record is not material. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). On appeal, Childs indicates that the information in the nonpublic record might have allowed for Davis's credibility to be attacked, but such speculation falls short of undermining confidence in the outcome.

In sum, although the evidence was suppressed, it was neither favorable to the defense nor material. As a result, reversal is not warranted.

## III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Childs argues that his lawyer provided constitutionally deficient assistance during the plea negotiations and multiple times during trial. Because no evidentiary hearing was held, this Court's review is based on the existing record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

### B. ANALYSIS

In order to establish a claim of ineffective assistance, the defendant bears the burden of showing that his or her lawyer's "performance fell below an objective standard of reasonableness," *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014), and that he or she was prejudiced by the deficient performance, *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). A defendant is prejudiced if there is a "reasonable probability" that, but for the lawyer's deficient performance, "the result of the proceedings would have been different." *Id*. Effective assistance is presumed. *Lane*, 308 Mich App at 68.

### 1. PLEA BARGAIN

Childs first argues that his lawyer provided constitutionally deficient assistance during the plea-bargaining process by telling him that he would *not* face a mandatory 25-year minimum sentence if he were convicted of assault by strangulation. He asserts that, based upon his lawyer's erroneous advice, he rejected a favorable plea offer and sentencing agreement. Based upon the existing record, it is unclear whether Childs's lawyer did or did not incorrectly advise Childs regarding the applicability of the 25-year mandatory minimum.

However, even assuming *arguendo* that his lawyer provided him with erroneous advice, Childs cannot show that he was prejudiced. As it relates to prejudice arising from a lawyer's deficient performance during the plea process,

a defendant must show that but for the ineffective advice of [his lawyer] there is a reasonable probability that the plea offer could have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014) (quotation marks and citation omitted).]

Here, the felony information contained the habitual-offender notice informing Childs of the mandatory 25-year minimum sentence that he faced if convicted of assault by strangulation. Moreover, prior to rejecting the prosecutor's plea offer, Childs was repeatedly informed—on the record on multiple days—that he was facing a *mandatory* 25-year minimum sentence. Indeed, at one hearing, the court asked Childs if he understood that he was looking at a mandatory 25-year minimum sentence if he were to be convicted, and Childs stated that he understood. Further, the court asked if Childs understood that he was subject to the 25-year mandatory minimum *because* of his status as a fourth-offense habitual offender, and Childs stated that he understood. Childs then indicated that he appreciated the offer, but wished to proceed to trial. Based upon the foregoing, Childs cannot demonstrate that he would have accepted the plea offer but for the allegedly erroneous advice given by his lawyer.

## 2. LESSER INCLUDED OFFENSE

Childs next argues that his lawyer was ineffective for failing to request an instruction on simple assault as a lesser included offense of assault by strangulation. The decision whether to request an instruction on a lesser included offense is a matter of trial strategy. *People v Smith*, 336 Mich App 79, 104; 969 NW2d 548 (2021). "There is a strong presumption that trial counsel's decision-making is the result of sound trial strategy." *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). Based upon the trial lawyer's closing argument, the defense strategy was to argue that Davis's testimony lacked credibility and that Childs was not guilty of any of the charged offense. It was reasonable to forego a request for a lesser-included-offense instruction in order to emphasize that defense theory. See *Smith*, 336 Mich App at 104. Accordingly, Childs has not established that his lawyer was ineffective for declining to request an instruction on simple assault as a lesser included offense of assault by strangulation.

## 3. FAILURE TO OBJECT TO CELL TOWER TESTIMONY

Childs next contends that his lawyer was ineffective for failing to object to evidence that he characterizes as a cell tower analysis provided by Shawntee Jeffries, a 911 records custodian. Jeffries was not qualified as an expert. Childs contends that her testimony regarding the specific locations of Davis's cell phone at the times of her 911 calls was unreliable because there was no way the precise locations of Davis's cell phone could have been known. Alternatively, he suggests that his lawyer was ineffective because he did not use Jefferies's testimony to impeach Davis regarding where she and Childs were located during one of the calls. We disagree.

First, Davis testified that she did not recall the exact times that she called 911. As a result, although she could testify to making 911 calls, she could not testify as to where she was when those calls were made. Thus, the impeachment value from the location testimony is of limited value and certainly does not demonstrate that, but for the decision not to impeach her on this matter, the outcome of the trial would have been different.

Moreover, a lawyer's decision not to object to testimony "can often be consistent with sound trial strategy." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Likewise, decisions regarding the questioning of witnesses are presumed to be trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). We will not substitute our judgment for that of a defendant's lawyer on trial strategy or use the benefit of hindsight when assessing his or her competence. *Unger*, 278 Mich App at 242. Rather than object and draw attention to Jefferies's allegedly improper testimony, Childs's lawyer chose to instead cross examine her regarding her limited role in the case. See *Unger*, 278 Mich App at 242 (noting that sometimes it is better not to draw attention to an improper comment by objecting to it). Specifically, Jefferies admitted that she did not personally collect any of the information or personally receive the 911 calls at issue but was relying on information that was put into a computer system by a 911 operator. Finally, during closing argument, the prosecutor used Jeffries' testimony only to emphasize that three 911 calls were made from Davis's phone, not to establish the locations from which the calls were made. Thus, although the testimony was used to corroborate aspects of Davis's testimony, it was not used to show that she was at any particular place when she made the 911 calls. For the foregoing reasons, we conclude that Childs has failed to establish ineffective assistance by his lawyer related to Jefferies's testimony.

### 4. FAILURE TO OBJECT TO RECORDING OF 911 CALL AND DAUGHTER'S TESTIMONY

Childs next contends that his lawyer provided ineffective assistance by failing to object to the admission into evidence of the recording of Davis's daughter's 911 call as well as the daughter's testimony indicating that she was afraid. We disagree.

"Generally, all relevant evidence is admissible at trial." *People v Powell*, 303 Mich App 271, 277; 842 NW2d 538 (2013) (quotation marks and citation omitted). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. At the time of trial, MRE 403 provided that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is *unfairly* prejudicial." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). "In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *Id*.

The daughter's 911 call was relevant to explain the context and sequence of events, including the reason why the police arrived when they did. The fact that she was scared shed light on why she called 911 immediately rather than waiting two hours as Davis had instructed. Additionally, the daughter's call was admissible under the excited-utterance exception to the

hearsay rule, which provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). Here, the daughter's 911 call related to a startling event—her mother being held hostage—and it was made while the daughter was under the stress or emotional shock of that event.

Because the daughter's 911 call was both relevant and admissible as an excited-utterance under MRE 803(2), any objection by Childs's lawyer would have been futile. A defendant's lawyer is not ineffective for failing to make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Relatedly, Childs argues that his lawyer should have objected to the admission into evidence of recordings of 911 calls made by three other people. Childs notes that the additional callers only relayed information conveyed to them by Davis's daughter. Again, however, the additional 911 calls were relevant to explain the context and sequence of events, they were made within minutes of learning of the hostage situation, and any fear or concern reflected in the calls shed light on the reason why the calls were made. The trial court did not err by determining that the statements in the calls were excited utterances. Childs's lawyer, therefore, was not ineffective for failing to make a futile objection. See *id*.

### 5. FAILURE TO OBJECT TO REFERENCES OF CHILDS BEING A "BARRICADED GUNMAN"

Childs asserts that his lawyer provided ineffective assistance by failing to object to references to him as a barricaded gunman. He also challenges an officer's testimony indicating that he had been arrested at Davis's house and that he was in custody when he was interviewed. Childs maintains that the evidence was irrelevant, prejudicial, and branded him as guilty. We disagree.

The officer testified the declaration of a "barricaded gunman" when responding to a question regarding the reason why he remained at the scene for several hours. This response was relevant to explain the police actions. Davis's testimony indicated that Childs had held a gun to her head earlier and that she was unsure if he still had the gun. Thus, Childs was still in the house, and the police had reason to believe he may have had a gun. Given this record, we conclude that the use of the term "barricaded gunman" was not irrelevant or unfairly prejudicial. Childs's lawyer, therefore, was not ineffective for failing to object. See *id*.

### 6. TESTIMONY REGARDING CHILDS'S CONSTITUTIONAL RIGHTS

Childs asserts that the trial court plainly erred by permitting the elicitation of testimony from a detective regarding his alleged attempt to invoke his *Miranda*[3] rights, which Childs contends amounted to a due process violation. Specifically, Childs refers to testimony that, after being read his *Miranda* rights, he refused to sign a written waiver of those rights, refused to answer

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

certain questions, and ultimately asked for a lawyer. Childs further argues that his lawyer was ineffective for failing to object to the testimony and for asking questions regarding it. We disagree.

If a defendant refuses to say anything after being given *Miranda* warnings, then testimony about that refusal is improper. *People v McReavy*, 436 Mich 197, 217-218; 462 NW2d 1 (1990). But the record reflects that Childs did not remain silent after being given his *Miranda* warnings. Although he declined to sign a written waiver form, he orally indicated that he understood his rights and proceeded to answer questions. During the interview, Childs refused to answer two of the questions, and the detective then moved on to other questions, to which Childs responded. "[A] defendant who speaks following *Miranda* warnings must affirmatively reassert the right to remain silent." *People v Davis*, 191 Mich App 29, 35-36; 477 NW2d 438 (1991). Because Childs did not affirmatively and unequivocally invoke his right to remain silent following his *Miranda* waiver, he cannot establish an infringement of his right to remain silent. Also, once Childs requested a lawyer, the detective terminated the interview. Finally, following a juror question regarding Childs's invocation of his right to a lawyer, both parties agreed to further questioning in lieu of playing the interrogation video. In light of this record, Childs has failed to establish any due process violation. Because no due-process violation exists, Childs's lawyer was not ineffective for failing to object to the testimony. See *Ericksen*, 288 Mich App at 201.

## 7. ADMISSION OF PHOTOGRAPHS

Childs asserts that his lawyer was ineffective for failing to object to the admission of photographs depicting Davis's injuries because the versions of the photographs displayed in the courtroom made her injuries appear more prominent than they appeared in copies of the photographs provided to the defense. We disagree.

During the direct examination of Davis at trial, the prosecutor introduced photographs of Davis showing injuries to her face, neck, and arm. Childs's lawyer stated that he had no objection to the admission of the photographs into evidence. The trial court then admitted the photographs into evidence. The photographs were displayed to the jury as Davis testified about the injuries shown in the photographs. At one point, Davis testified about a photograph that she said showed marks on her neck from defendant strangling, grabbing, and pulling her. The prosecutor explained that there was a "little bit" of a difference between the photograph as displayed in the courtroom and the printed copy of the photograph that the jury would have in the jury room.

The trial court asked if Childs's lawyer had any objection to the prosecutor's characterization. Childs's lawyer responded that he was objecting to the prosecutor's commentary on the photograph because "[t]he photograph speaks for itself." On further questioning, Childs's lawyer reiterated that he believed it was improper for the prosecutor to comment on the photographs, but did not object to the photographs themselves. Now, Childs argues that the photographs displayed in the courtroom were unfairly prejudicial, misleading, and are not accurate reproductions of the originals. He further maintains that his lawyer should have mitigated the prejudice by seeking to admit into evidence what he calls the original versions of the photographs and by urging the jury to draw negative inferences about Davis's credibility as well as the credibility of the investigation.

Yet, the fact that a photograph may appear somewhat different when printed or displayed does not establish deception or lack of authenticity. The printed versions were available to the jury and the jury was aware of the difference between the photographs displayed in the courtroom and the printed versions. Childs's lawyer was not ineffective for failing to make a futile objection. See *id*.

## 8. FAILURE TO CALL WITNESSES

Next, Childs asserts that his lawyer was ineffective because he did not call Childs's mother or roommate as witnesses, nor did he interview them to ascertain what testimony they could provide. A defense lawyer has "the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). But there is no "unconditional obligation to call or interview every possible witness . . . ." *People v Beard*, 459 Mich 918, 919; 589 NW2d 774 (1998). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

On appeal, Childs has not shown that his lawyer failed to speak to the potential witnesses. Instead, he has only presented affidavits that were signed by his mother and roommate before his trial lawyer was even appointed. He has not presented any evidence indicating that his lawyer failed to interview them. Moreover, it is unclear that either witness was at the Manor Street address at the time of the strangulation. Instead, his mother averred that she arrived at the house at about 1:50 a.m. That was almost certainly after the strangulation, given the timeline of events described by Davis. And Childs's roommate averred that she left the house between 11:50 p.m. and 12:10 a.m. and returned at around 3:45 a.m. Given this timeframe, it is unclear if she was home at the time of the strangulation. Childs points out, however, that his mother's affidavit indicates that, when Childs came to the house to get money, he left the car running, with Davis inside the car, and ran upstairs to the restroom. Childs suggests this means that Davis was free to drive away while he was in the house. This information contradicted Davis's account of the meeting, which she stated was very brief and did not involve Childs going into the house.

Although these witnesses could arguably have been useful, no basis exists for this Court to substitute its judgment for that of Childs's lawyer regarding the risks and benefits of calling the witnesses. Neither witness could say whether the assaults occurred. And Childs's lawyer pursued a reasonable strategy of attempting to undermine Davis's credibility by thoroughly cross-examining her and arguing in closing that her testimony should not be believed. This avoided the inherent risks associated with calling Childs's mother and roommate, who would have been subject to cross-examination by the prosecutor. Given the record, we conclude that Childs has failed to overcome the presumption that his lawyer's decision to not call them as witnesses was a reasonable strategic choice.

## 9. UNANIMITY INSTRUCTION

Childs contends that his lawyer was ineffective because he did not request that the jury be instructed regarding a specific unanimity instruction.[4]  We disagree.  A criminal defendant is entitled to a unanimous jury verdict.  *People v Chelmicki*, 305 Mich App 58, 67; 850 NW2d 612 (2014).  The trial court therefore has a duty to provide a proper unanimity instruction to the jury.  *Id*. at 67-68.  "Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity."  *Id*. at 68.  But "a specific unanimity instruction may be required in cases in which 'more than one act is presented as evidence of the *actus reus* of a single criminal offense' and each act is established through materially distinguishable evidence that would lead to juror confusion."  *Id*., quoting *People v Cooks*, 446 Mich 503, 512-513; 521 NW2d 275 (1994).  The *Cooks* Court explained:

> [I]f alternative acts allegedly committed by defendant are presented by the state as evidence of the *actus reus* element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt.  [*Id*. at 524 (citation omitted).]

Davis testified that Childs choked her near a picnic table outside the garage of the Manor Street house.  Once he stopped choking her, he pushed her into the garage and choked her again.  There was no material distinction between the two acts.  The two acts occurred close in time and in close physical proximity to one another.  Both acts of strangulation lasted a matter of seconds.  In each instance, Davis was "not really" able to breathe, but she did not lose consciousness.  Additionally, the defense theory was that Davis was lying and that the assaults did not occur.  The jury's primary task was to determine Davis's credibility.  There was no indication of juror confusion or disagreement over the existence of either act.[5]  A specific unanimity instruction was therefore unwarranted, so Childs's lawyer was not ineffective for failing to request it.  See *Ericksen*, 288 Mich App at 201.

---

[4] Childs also asserts that the trial court erred by failing to provide a specific unanimity instruction.  However, given that his lawyer expressed satisfaction with the jury instructions, any error is waived.  See *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017).

[5] Childs speculates that individual jurors may have had different concerns about the respective locations of the assaults.  He says some jurors may have found it implausible that defendant would strangle Davis outside for anyone to see, but the assault occurred on private property very late at night.  He also notes that the jury found him not guilty of other offenses allegedly committed in the garage, but those other offenses occurred after the strangulation and involved an alleged gun that was never recovered.  We are thus unconvinced that there are material differences between the two acts.

## 10. CUMULATIVE ERROR

Finally, Childs argues that the cumulative effect of the alleged instances of ineffective assistance denied him a fair trial. In the absence of any errors, "there can be no cumulative effect of errors meriting reversal." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Because there were no errors, Childs's argument is without merit.

## IV. BILL OF PARTICULARS

## A. STANDARD OF REVIEW

Childs argues that the trial court abused its discretion denying his motion for a bill of particulars. A trial court's decision whether to order a bill of particulars is reviewed for an abuse of discretion. *People v Southern*, 306 Mich 324, 326; 10 NW2d 901 (1943).

## B. ANALYSIS

Under MCR 6.112(E), "[t]he court, on motion, may order the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense." Here, although Childs's lawyer moved for a bill of particulars, the court denied the motion because a preliminary examination had been held. At the preliminary examination, Davis testified regarding the assault, including being strangled. Generally, a preliminary examination removes the need for a bill of particulars by informing the defendant of the nature of the charges against him. *People v Harbour*, 76 Mich App 552, 557; 257 NW2d 165 (1977).

## V. SPEEDY TRIAL

## A. STANDARD OF REVIEW

Childs also argues that he was denied his right to a speedy trial. Whether a defendant was denied the right to a speedy trial is an issue of constitutional law that is reviewed de novo. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). Any findings of fact by the trial court are reviewed for clear error. *Id.*

## B. ANALYSIS

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Williams*, 475 Mich at 261, citing US Const, Am VI, and Const 1963, art 1, § 20. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. "Whether an accused's right to a speedy trial is violated depends on consideration of four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013) (quotation marks and citation omitted). "When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred." *Id.* "[A] presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich at 262 (quotation marks and citation omitted).

On September 24, 2020, Childs filed a handwritten motion to dismiss the case due to a speedy trial violation, noting that he was arrested in this case on December 8, 2019, and had been incarcerated since then. At that time, the trial had been scheduled for April 2020 but was adjourned due to the COVID-19 pandemic. And Childs had already changed lawyers twice and had also filed eight motions, thereby delaying the ability of the trial court to certify the case as ready for trial. The delay was thus attributable to the pandemic and Childs's own actions. The delay at that point was less than 18 months, and the court found that Childs had failed to demonstrate prejudice. The court, therefore, denied the motion.

On October 15, 2021, Childs filed another handwritten motion to dismiss the case on speedy trial grounds. In response, the court noted that Childs was continuing to file multiple repetitive motions regarding matters on which the court had already ruled, including his speedy trial claim. The court explained that, generally, it would not continue to hear repetitive frivolous motions. And, as it related to the speedy-trial motion, the court stated that it had been trying to set the matter for trial, but that Childs had "walked out of Zoom hearings, refusing to, uh, sit, sit—to have the court hearing so that we could address some of these matters." The court explained that Childs had "contributed, significantly, to the delay in getting this case to trial," which is why a trial date had not been set.

In light of the record in this case, Childs was not denied his right to a speedy trial. Regarding the first factor, the length of the delay, it is undisputed that defendant was arrested on December 8, 2019, and went to trial on June 27, 2022. Because the delay was more than 18 months, prejudice is presumed, and the prosecutor must show that no injury occurred. *Rivera*, 301 Mich App at 193.

Regarding the second factor, the reason for delay, the delay was due to a series of factors that are not attributable to the prosecution, including the suspension of jury trials as a result of the COVID-19 pandemic, multiple changes of lawyers by Childs, numerous (and sometimes repetitive) defense motions, and Childs's refusal to participate in many of the court hearings. "[D]elays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5. Further, delays caused by a defense-requested adjournment, a substitution of lawyers, or the resolution of defense motions are generally attributed to the defense. *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999).

With respect to the third factor, Childs asserted his speedy trial right by filing speedy trial motions, but he also expressly stated that he was willing to delay trial in order to bring more motions, which were largely repetitive. Given that he contradicted his motion by expressly consenting to the delay so that his motions could be resolved, this factor does not weigh in favor of a finding that Childs's speedy-trial rights were violated.

As for the fourth factor, prejudice is presumed given the length of the delay. But we conclude that Childs did not suffer prejudice. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* (quotation marks and citations omitted). Generalized allegations of

-11-

prejudice, such as nonspecific claims that delay causes memories to fade, do not establish a denial of the right to a speedy trial. *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). There was no loss of evidence during the delay. No witnesses died. Childs suggests that a police detective suffered memory loss regarding aspects of the interrogation, but his memory was refreshed from reviewing documents. Childs also maintains that the delay caused the breakdowns in his relationships with his lawyers. That contention is belied by the record, which shows that it was Childs's behavior that led to the withdrawals of his lawyer. Further, Childs suffered no prejudice to his person from being in custody because he was on a parole hold in another case.

In conclusion, although the delay was lengthy, it was caused by factors not attributable to the prosecution and Childs did not suffer prejudice. Accordingly, he was not denied his right to a speedy trial.

## VI. SENTENCING

### A. STANDARD OF REVIEW

Childs further argues that he is entitled to jail credit for time served before sentencing, that his mandatory 25-year minimum sentence for assault by strangulation is unconstitutionally cruel or unusual punishment, and that the habitual offender notice is invalid. To preserve an issue regarding jail credit, a defendant must request jail credit at sentencing or raise an objection on that ground. *People v Allen*, 507 Mich 597, 604; 968 NW2d 532 (2021). Childs raised the jail credit issue in his motion to vacate his convictions or correct his sentences and again at the resentencing hearing. Hence, the issue regarding jail credit is preserved, and we review it de novo. *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011). "To preserve a claim that the defendant's sentences were unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court." *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). At the resentencing hearing, Childs's lawyer asserted that the mandatory 25-year minimum sentence was unconstitutionally cruel or unusual. That issue is therefore preserved. We review de novo that constitutional challenge. *Id*. To preserve an issue regarding the habitual offender notice, a defendant must raise the issue in the trial court. *People v Marshall*, 298 Mich App 607, 625-626; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013). Because Childs did not do so, that issue is unpreserved. We review that issue, therefore, for plain error affecting Childs's substantial rights. *Id*. at 626.

### B. ANALYSIS

#### 1. JAIL CREDIT

In *People v Idziak*, 484 Mich 549, 552; 773 NW2d 616 (2009), our Supreme Court held that

> under MCL 791.238(2), the parolee resumes serving his earlier sentence on the date he is arrested for the new criminal offense. As long as time remains on the parolee's earlier sentence, he remains incarcerated, regardless of his eligibility for bond or his ability to furnish it. Since the parolee is not being held in jail "because of being denied or unable to furnish bond," the jail credit statute does not apply.

In *Allen*, 507 Mich at 600, our Supreme Court considered "whether a parolee defendant is entitled to jail credit under MCL 769.11b when the Michigan Department of Corrections (the MDOC) has not yet filed a parole detainer against the defendant." Our Supreme Court "conclude[d] that jail credit must be given in this situation and that our holding in [*Idziak*], broadly speaking, supports that determination." *Allen*, 507 Mich at 600.

Childs argues that the Department of Corrections did not file a parole detainer. He relies on a June 17, 2020 letter from a pretrial services specialist of the Wayne Circuit Court stating, in relevant part, that Childs did not "have any outstanding warrants or holds." Childs also relies on documents from the Department of Corrections reflecting extensions of his parole term. An August 21, 2020 order for parole extension stated that Childs's parole term was extended to expire on August 23, 2021. This parole extension was recommended in order to allow the completion of court proceedings in the instant case. About a year later, the parole term was again extended to expire on August 23, 2022. This parole extension was again recommended to allow the completion of court proceedings in the instant case.

We conclude that documents relied upon by Childs do not establish that there was no parole detainer. The June 17, 2020 letter does not specifically address parole detainers, and Childs fails to explain the reasons why this letter would be dispositive of whether a parole detainer was filed. Moreover, the parole extensions were made to facilitate the completion of the court proceedings in this case. Additionally, although a copy of the parole detainer has not been provided to this Court, the record contains references to the existence of the parole detainer. At a January 22, 2020 pretrial hearing that included a discussion of bond, the trial court noted that there was a "parole hold," and the prosecutor agreed on the basis of a "pretrial services report." Childs's lawyer acknowledged having received that report, did not dispute the existence of a parole hold, and stated that "we understand where we are, in terms of bond." The trial court stated, because of the parole hold, it would not address the matter of bond. In sum, the record reflects that Childs was subject to a parole detainer for all but two days of his pre-conviction incarceration on the instant matter. Childs, therefore, is not entitled to additional jail credit.

## 2. CRUEL OR UNUSUAL PUNISHMENT

Childs next argues that his mandatory 25-year minimum sentence under MCL 769.12(1)(a) is unconstitutionally cruel or unusual punishment as applied to him. We disagree.

"Under the Michigan Constitution, the prohibition against cruel or unusual punishment includes a prohibition on grossly disproportionate sentences." *Burkett*, 337 Mich App at 636. (quotation marks, brackets, and citation omitted). In determining whether a punishment is cruel or unusual, this Court considers: "(1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id*. at 636-637 (quotation marks and citation omitted). "Legislatively mandated sentences are presumptively proportional and presumptively valid." *Id*. at 637 (quotation marks and citation omitted). To overcome the presumption that a sentence is proportionate, the defendant is required to "present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its

unconstitutionality is clearly apparent." *Id*. (quotation marks and citation omitted). "This Court has . . . held that habitual-offender statutes are constitutional and the sentences under them are not cruel and unusual, because the state has a right to protect itself from individuals who continue to engage in criminal activities." *Id*. (quotation marks and citation omitted).

Here, Childs has failed to present any unusual circumstances that would overcome the presumption that his legislatively mandated minimum sentence is proportionate. He notes that he was acquitted of possessing a firearm in this case and that his prior carrying a concealed weapon conviction was the only listed prior felony as defined in MCL 769.12(6)(a). He asserts that his present conviction was not part of a pattern of violent crimes. Yet, the record reflects that Childs has an extensive criminal history dating back decades, including multiple convictions for resisting and obstructing a police officer, a conviction for resisting and obstructing causing injury, and a conviction for an attempted disarming of a police officer. The present offense involved an assault by strangulation. Childs is clearly a violent criminal offender. His sentence was not cruel or unusual.

### 3. HABITUAL-OFFENDER NOTICE

Childs argues that the habitual offender notice was invalid because it was incorrect and ambiguous. We disagree. A prosecutor may seek to enhance a defendant's sentence by filing a written notice of the intent to do so within 21 days after the arraignment on the information. MCL 769.13(1). The notice "shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement." MCL 769.13(2).

According to Childs, neither he nor his lawyer understood that he would be subject to a mandatory 25-year minimum sentence if he was convicted of assault by strangulation. He contends that the habitual offender notice was facially invalid and overly broad. But the notice provided the statutorily required information. The notice listed Childs's previous felony convictions, including carrying a concealed weapon, which is a listed felony under MCL 769.12(6)(a). There is no requirement in the statute that the notice state which prior conviction is a listed felony or which charged offenses qualify as serious crimes. The notice informed Childs that at least one of his prior offenses was a listed felony as defined in MCL 769.12(6)(a), that he was subject to the penalties set forth in MCL 769.12(1)(a), and that the minimum sentence must be at least 25 years. He was thus afforded the requisite notice. Childs has failed to show a plain error or prejudice.

### VII. STANDARD 4 BRIEF

In a supplemental brief filed pursuant to Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004), Childs raises a number of additional arguments, which we address in turn.

First, Childs asserts that his trial lawyers were ineffective for failing to argue that the absence of a signed copy of the arrest warrant in the lower court record deprived the trial court of subject-matter jurisdiction. He also complains that he was not afforded a "swear to" hearing to establish probable cause for the issuance of a warrant. Finally, he alleges improprieties in the magistrate's signing of the felony complaint. We disagree.

An unsigned copy of the warrant is in the record. The register of actions, however, indicates that the warrant was signed on December 9, 2019. In any event, "an illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court." *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009). "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Childs has failed to establish that any defect in the warrant divested the trial court of jurisdiction. Accordingly, Childs's lawyers were not ineffective for failing to make a meritless argument with respect to the warrant. *Ericksen*, 288 Mich App at 201.

Moreover, the magistrate was not required to take testimony at a formal "swear to" hearing in order to find probable cause for the issuance of a warrant. The magistrate was permitted to rely on other sources, including the factual allegations in the complaint. MCR 6.102(B). In any event, any defect in the procedure related to the arrest warrant would not divest the trial court of jurisdiction. *Porter*, 285 Mich App at 462. Further, there was nothing improper about the complaint, which contains the signature of a complaining witness as well as the signature of the magistrate indicating that the complaint was subscribed and sworn to before her on December 9, 2019. Childs argues that the magistrate committed fraud because there was no probable cause hearing and that the trial court therefore never obtained jurisdiction. This argument is unconvincing. Childs provides no basis to question the magistrate's signature indicating that the complaint was subscribed and sworn to before her.

Childs next argues that his trial lawyer was ineffective for failing to impeach Davis. According to Childs, Davis's testimony was inconsistent and false. He notes that Davis testified that he had an automatic pistol even though no automatic pistol was ever found. He also notes that the only gun recovered in this case had Davis's DNA on it. He believes that Davis should not have had a firearm because her son was on probation or parole and that Davis made a deal with the prosecutor to keep herself and her son out of trouble. However, the record reflects that Childs's trial lawyer thoroughly cross-examined Davis. The jury was informed that the police did not find the gun that Davis claimed Childs had fired at her; Childs's lawyer emphasized this point in closing argument. Indeed, the jury found Childs not guilty of the charged offenses involving a gun. The jury was also apprised that the gun recovered in Davis's home had her DNA on it. Finally, Childs identifies no basis in the record for his allegations about Davis's son being on probation or parole and about a supposed deal between Davis and the prosecutor. In sum, Childs has failed to establish deficient performance related to the alleged failure to impeach Davis's testimony.

He next argues that his lawyer was ineffective for refusing to allow him to testify. But after being placed under oath outside the presence of the jury, Childs was questioned by his lawyer and agreed that his lawyer had asked him whether he wanted to testify. Childs testified that he had decided to exercise his right to remain silent, that his lawyer had not made any promises or threats, and that his lawyer had discussed the matter with him. The trial court asked Childs if he was making the decision of his own free will, and Childs responded, "Yes." The record thus establishes that Childs chose of his own free will not to testify. On this record, therefore, Childs cannot show that his lawyer refused to allow him to testify. See *Hoag*, 460 Mich at 6.

-15-

Childs additionally claims that his lawyer was ineffective for failing to call defense witnesses who would have provided exculpatory testimony. He suggests that the original officer-in-charge should have been called because her report did not refer to a strangulation or assault. He also refers to an "SRT team," which is presumably a special response team of the police, but he does not identify any particular individual members of that team. Childs provides no affidavit of any such witnesses showing how they would have testified. As a result, he has failed to establish the factual predicate for his claim that such witnesses would have provided testimony favorable to the defense. See *id*.

Childs also contends that his lawyer failed to present a meaningful adversarial challenge to the prosecutor's case regarding the strangulation. But the record refutes that allegation. Childs's lawyer thoroughly cross-examined Davis and argued (with partial success) to the jury that Davis lacked credibility and that her testimony should not be believed.

Childs maintains that the cumulative effect of his lawyer's errors denied him a fair trial. But, given that no errors were established, reversal is not warranted on that basis. *Dobek*, 274 Mich App at 106.

Childs suggests that the case should be remanded for an evidentiary hearing. But he has not provided any facts that would require development of a record. MCR 7.211(C)(1)(a). Therefore, we deny the request.

Childs also asserts that his constitutional rights to due process and a jury trial were violated because the trial court had an improper ex parte communication with the jury. However, there is no support in the record for Childs's claim that the trial court communicated ex parte with the jury. Because Childs has failed to establish the existence of an ex parte communication, his contention of constitutional violations predicated on such an ex parte communication must fail.[6]

Childs next argues that there was insufficient evidence to support his convictions. "This Court reviews de novo whether there was sufficient evidence to support a conviction." *People v Kenny*, 332 Mich App 394, 402; 956 NW2d 562 (2020). "[T]his Court must view the evidence— whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven

---

[6] Childs says that he has attempted to find a bailiff in order to secure an affidavit from him but that the bailiff is no longer employed by the Wayne County Sheriff's Department. In support, he cites one of his own affidavits, which says nothing about the bailiff or about any attempts to find him. In a second (uncited) affidavit, Childs asserts that a bailiff told him that the jury had sent a note about the pictures. Yet, he avers nothing regarding any efforts to find the bailiff. Even if this affidavit is considered, it provides no information about the specific question asked by the jury or about whether or how the trial court answered the question. Also, the affidavit appears inconsistent with Childs's appellate argument, in which he asserts that the jury's question was about the jury instructions related to the charges and about the offenses of which he could be found guilty, not about the pictures. The affidavit fails to support Childs's argument that a prejudicial ex parte communication occurred.

beyond a reasonable doubt." *Id*. at 402-403. "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *Id*. at 403. This Court "must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. (quotation marks and citation omitted).

> MCL 750.84(1)(b) criminalizes "[a]ssault[ing] another person by strangulation or suffocation." An "assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). And a "battery is the consummation of an assault." *Id*. Additionally, MCL 750.84(2) defines "strangulation or suffocation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." [*People v Lydic*, 335 Mich App 486, 498 n 9; 967 NW2d 847 (2021) (alterations in original).]

Davis testified that, after Childs pushed her toward a picnic table outside the garage of his Manor Street home, he choked her by placing both of his hands around her neck and applying pressure. Davis could not really breathe, but she did not lose consciousness or black out. She felt scared for her life. The same type of choking incident then occurred in the garage. Davis testified that, among the injuries she suffered from this incident, she developed red marks on her neck. Photographs of Davis's face, neck, and arms were admitted as exhibits. Davis testified that the photographs showed various injuries, including marks on her neck or chest area.

Childs's claims that there was no physical evidence to corroborate Davis's testimony, such as Davis's blood or physical marks on her body from the assault. Childs also asserts that no police officers made any notes or reports indicating that Davis had visible marks or wounds on her neck. Finally, he also notes the absence of medical records to establish a physical injury. However, Davis's testimony was sufficient to establish that Childs committed an assault by strangulation. The prosecutor was not required to produce physical or documentary evidence corroborating Davis's testimony. See *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976).

Childs next argues that he was denied his constitutional right of equal protection. "In essence, equal protection requires that persons be treated alike with respect to certain, largely innate, characteristics that do not justify disparate treatment." *People v James*, 326 Mich App 98, 105; 931 NW2d 50 (2018) (quotation marks and citation omitted). "To be similarly situated to an identified group, [a] defendant must show that he is comparable in all material respects to the members of that group." *Id*. at 106. "If he cannot establish that he was treated unequally in some material way, then there is no violation of equal protection." *Id*.

Childs has not shown that he was treated differently from any similarly situated individuals. He essentially argues that he has been treated unfairly because there was no evidence corroborating Davis's testimony, whereas other criminal defendants have been convicted on the basis of additional evidence corroborating the complainant's testimony. But Childs was convicted on the basis of the evidence that existed in this case. Other criminal defendants are, of course, convicted on the basis of the evidence that existed in their respective cases. Each criminal case is decided on the basis of the evidence in that case, and Childs is therefore not similarly situated to defendants

who are convicted on the basis of the evidence in those defendants' respective cases. Hence, the fact that there may have been less corroborative evidence here than in other cases does not establish that Childs was treated differently from any similarly situated individuals.

Childs further argues that he was denied equal protection because the police failed to comply with the requirements of MCL 764.15c regarding domestic violence incidents, including by failing to give a notice containing certain information and by failing to prepare a domestic violence report. Childs argues that the reason for the absence of a domestic violence report is that no domestic violence, assault, or strangulation occurred. He suggests that he never would have been charged if the proper domestic violence report had been prepared because the preparation of such a report would have involved an inquiry into whether Davis had injuries. Assuming that the police did not provide the notice or prepare the report required by MCL 764.15c, this fails to establish that no domestic violence occurred. The police may have failed to comply with the statute for any number of reasons. Childs has not shown that he was denied equal protection due to the alleged failure of the police to comply with MCL 764.15c.

Finally, Childs cursorily asserts that he has a discrimination claim against the prosecutor for knowingly using Davis's perjured testimony. There is no support in the record for Childs's assertion. It was the jury's role to decide whether to believe Davis's testimony. *Unger*, 278 Mich App at 222. The fact that Davis's credibility was subject to challenge does not by itself establish that she committed perjury, let alone that the prosecutor knowingly used such perjured testimony.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman